**Ralph R. COZZOLINO, Appellant,**
v.
**STATE of Tennessee, Appellee.**

Supreme Court of Tennessee.

June 11, 1979.

Rehearing Denied Aug. 20, 1979.

John C. Littleton, Roger W. Dickson, Chattanooga, for appellant.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, for appellee.

## OPINION

COOPER, Justice.

This case is before us pursuant to TCA § 39–2406, which provides for review by this court of all cases in which a death penalty is imposed for first degree murder. We reverse, and remand for a new sentencing proceeding.

The defendant, Ralph Cozzolino, pled guilty to the first degree murder of Clarence Hamler, an officer of the Chattanooga Police Department. A proceeding was then held under the provisions of TCA § 39–2404 to determine the punishment to be imposed. Under this statute, a trial of first degree murder is a bifurcated proceeding, with the jury first determining the defendant's guilt or innocence of the charge, or, as happened here, with the defendant first admitting his guilt. If it is found that the defendant is guilty of first degree murder, a second proceeding is held before the same jury to determine the sentence—either life imprisonment or death—to be imposed. The jury may impose the death penalty only upon finding that one or more aggravating circumstances, listed in the statute, are present, and further that such circumstance or circumstances are not outweighed by any mitigating circumstance.[1] With respect to the evidence that may be introduced on these issues, the statute provides, in TCA § 39–2404(c), that

---

1. TCA § 39–2404(i) provides:

No death penalty shall be imposed but upon a unanimous finding, as heretofore indicated, of the existence of one or more of the statutory aggravating circumstances, which shall be limited to the following:

(1) The murder was committed against a person less than twelve years of age and the defendant was eighteen years of age, or older.

(2) The defendant was previously convicted of one or more felonies, other than the present charge, which involve the use or threat of violence to the person.

(3) The defendant knowingly created a great risk of death to two or more persons, other than the victim murdered, during his act of murder.

(4) The defendant committed the murder for remuneration or the promise of remuneration, or employed another to commit the murder for remuneration or the promise of remuneration.

[i]n the sentencing proceeding, evidence may be presented as to any matter that the court deems relevant to the punishment and may include, but not be limited to, the nature and circumstances of the crime; the defendant's character, background history, and physical condition; any evidence tending to establish or rebut the aggravating circumstances enumerated . . . below; and any evidence tending to establish or rebut any mitigating factors. Any such evidence which the court deems to have probative value on the issue of punishment may be received regardless of its admissibility under the rules of evidence . . . .

In the course of the defendant's sentencing proceeding, the State, over the objection of the defendant, introduced evidence of statements by the defendant in which he admitted committing a number of armed robberies during the time between the murder and his capture. The jury imposed a sentence of death.

■ The defendant has raised several assignments of error, only two of which we need reach. The first of these is his contention that the death penalty constitutes cruel and unusual punishment, and as such may not be imposed by this state either under the 14th amendment of the United States Constitution or under Article 1, § 16 of the constitution of this state. This court has previously held that this state is not prohibited from imposing the death penalty in the manner set forth in TCA § 39–2404 *et seq.* by the restrictions placed on it by the 14th amendment. *Miller v. State*, Tenn., 584 S.W.2d 758 (1979). In that case, the question was not raised as to whether the death penalty could stand in the face of the prohibition against cruel and unusual punishment contained in the state constitution. Without detailing the precise scope of the protection afforded by that clause, we hold that it places no greater restriction on the punishments that may be imposed by this state than does the federal constitution.

■ The defendant has raised another claim that we consider dispositive of the case. He contends that it was error for the trial judge to permit the State to introduce, in its case in chief, evidence that the defendant committed crimes subsequent to the murder, in that this evidence was not relevant to the proof of the presence or absence of any statutory aggravating circumstance or mitigating factor, the only issues properly before the jury. In opposition, the State has argued that TCA § 39–2404(c) permits the introduction of this evidence regardless of its relevance to those issues. On its face section (c) would seem to permit the introduction of evidence "rel-

(5) The murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind.

(6) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another.

(7) The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any first degree murder, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb.

(8) The murder was committed by the defendant while he was in lawful custody or in a place of lawful confinement or during his escape from lawful custody or from a place of lawful confinement.

(9) The murder was committed against any peace officer, corrections official, corrections employee or fireman, who was engaged in the performance of his duties, and the defendant knew or reasonably should have known that such victim was a peace officer, corrections official, corrections employee or fireman, engaged in the performance of his duties.

(10) The murder was committed against any present or former, judge, district attorney general or state attorney general, assistant district attorney general or assistant state attorney general due to or because of the exercise of his official duty or status and the defendant knew that the victim occupied said office.

(11) The murder was committed against a national, state, or local popularly elected official, due to or because of the official's lawful duties or status, and the defendant knew that the victim was such an official.

No limitation is imposed on the mitigating factors that may be raised by the defendant. *See* TCA § 39–2404(j). *Cf. Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

evant to the punishment" in addition to that "tending to establish or rebut the aggravating circumstances" or "tending to establish or rebut any mitigating factors." However, this interpretation is one that we cannot accept. When the statute is considered as a whole, it is clear that the only issues that the jury may properly consider in reaching a decision on the sentence to be imposed are whether the State has established one or more of the aggravating circumstances beyond a reasonable doubt and, if so, whether any mitigating factors have been shown that would outweigh those aggravating circumstances. Any evidence that does not go to the proof of one or the other of those issues is irrelevant to the jury's deliberation. We cannot believe that the legislature intended that irrelevant evidence be placed before the jury, fraught as such a procedure would be with the "substantial risk that [the death penalty] would be inflicted in an arbitrary or capricious manner," *Gregg v. Georgia,* 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976), i. e., on the basis of factors other than those deemed by the legislature to be proper predicates for the sentencing determination. We think that a better interpretation of TCA § 39–2404(c), and one more in keeping with both the sense of the entire statute and the mandate of the United States Supreme Court, *see, e. g., Gregg v. Georgia, supra; Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), is that evidence is relevant to the punishment, and thus admissible, only if it is relevant to an aggravating circumstance, or to a mitigating factor raised by the defendant.

■ At the outset, it is apparent that this evidence of subsequent crimes was not admissible to establish any of the aggravating circumstances set forth in TCA § 39–2404(i), for it is relevant to none of them. This was recognized by the trial judge. From the limitations placed on the use of this evidence in the court's instructions, it appears that the trial judge permitted its introduction on the theory that it was relevant to rebut evidence of mitigating circumstances that might be advanced by the defendant. In this, he was in error. "Re-

butting evidence" is that which tends to explain or controvert evidence produced by an adverse party. *See, e. g., State v. Anderson,* 159 N.W.2d 809 (Iowa 1968); *Hutchinson v. Shaheen,* 55 A.D.2d 833, 390 N.Y.S.2d 317 (1976). One cannot rebut a proposition that has not been advanced. While this error admittedly might have been made harmless by the later introduction by the defendant of evidence to which the State's proof of subsequent crimes was relevant in rebuttal, that did not occur in the instant case. The defendant's proof was limited to an attempt to show the origin, in a troubled childhood, of the defendant's criminal acts. This proof was not controverted by the State's demonstration of his present criminal proclivities.

■ As this evidence was relevant to neither the statutory aggravating circumstances, nor to any mitigating factors raised by the defendant, its admission was error. Given the nature of the issue on trial, we are unable to hold that this error was harmless. Therefore, the verdict of the jury imposing the death penalty is reversed, and the case remanded for a new sentencing hearing. Our decision pretermits the other assignments of error raised by the defendant.

FONES and BROCK, JJ., concur.

HARBISON, J., and ALLISON HUMPHREYS, Special Justice, concur.

HARBISON, Justice, dissenting.

In this case appellant pled guilty to murder in the first degree committed in the perpetration of, or attempt to perpetrate, armed robbery. T.C.A. § 39–2402(a). The punishment prescribed for this offense is death by electrocution or imprisonment for life. T.C.A. § 39–2402(b).

Appellant's plea of guilty was entered into after a long and careful colloquy between him, his counsel and the trial judge. It came after more than two days of detailed voir dire examination of prospective trial jurors.

After the guilty plea had been accepted by the trial judge, the jury was impanelled and sworn, without additional examination by counsel. A sentencing hearing was then held under the provisions of T.C.A. § 39-2404, to determine the punishment to be imposed.

At the guilty plea hearing, the District Attorney made a narrative statement of the facts giving rise to the prosecution, which appellant stated to the trial judge was substantially correct. At the sentencing hearing the State called numerous witnesses, whose testimony generally corroborated the statement made by the District Attorney. Appellant's confession was read to the jury, in which he admitted the homicide, but contended that it was accidental rather than deliberate.

The evidence showed that appellant had previously been convicted five times, during the years between 1942 and 1957, of housebreaking, burglary, robbery and armed robbery. He had been sentenced in Tennessee as an habitual criminal in 1956, and was serving a sentence of life imprisonment immediately before the incident giving rise to the present prosecution.

On August 14, 1977 appellant and another prisoner left a minimum security institution in Nashville, and they were attempting to rob a grocery store in Chattanooga, holding the manager, a security guard and another store employee at gunpoint, when the homicide occurred. A young Chattanooga police officer was in the rear of the grocery store talking with his brother, a store employee, when he was notified by a young man employed as a grocery sacker that the robbery was taking place. The officer, in full uniform, approached appellant with his pistol drawn. Appellant ordered the officer to drop his weapon, and when the officer did not do so, appellant shot him twice, one of the bullets entering his neck and shoulder and inflicting injuries which proved fatal within a few moments. Appellant fled, exchanging gunshots with the manager of the store and the brother of the officer, and was not apprehended until nearly five months later, when, in January 1978, he was arrested in Georgia on charges of another armed robbery.

There was ample evidence from which the jury could conclude that the conduct of appellant was deliberate and calculated, and that the shooting was not accidental. Appellant had seen the police officer in the rear of the store earlier and had taken him for a security guard. After appellant and his companion had captured the store manager and a store security officer, near the front part of the store, appellant made a comment to the manager that there was another security officer in the rear. When the manager told appellant that the store had only one security guard, appellant called the manager a liar. Appellant was on the lookout for the approaching officer, however, and had given warnings that he would shoot and kill anyone attempting to interfere with him and his companion in the robbery of the store.

The State offered evidence not only of appellant's prior convictions but also offered the testimony of a Federal Bureau of Investigation officer to whom appellant had admitted the commission of at least six armed robberies in the months intervening between the August 1977 homicide and his capture in January 1978.

Appellant did not take the stand during the sentencing hearing to deny the testimony of the FBI officer, or for any other purpose. He offered testimony of two of his sisters, one of them by deposition, indicating that he had been the victim of a broken home and of mistreatment by his father and stepmother during his youth. There was testimony that he and his brothers and sisters had grown up under harsh economic circumstances and had had limited opportunities. There was further testimony, however, that after appellant matured, he was married and held a job at Oak Ridge, Tennessee for some time. He was later divorced and apparently had been incarcerated almost continuously since 1948.

Counsel for appellant offered evidence at the sentencing hearing, consisting of statements and data taken from dissenting opinions of a member of the United States

Supreme Court, to the effect that the death penalty was not a deterrent to crime.

Following the introduction of evidence, the trial judge charged the jury fully on the provisions of the Tennessee first degree murder statutes, and the jury unanimously returned a verdict imposing the death penalty. They found five aggravating circumstances, all of which were clearly shown by the evidence, and, indeed, practically admitted by the appellant in his plea of guilty to the charges, and found that these were not outweighed by any mitigating circumstances.

The trial judge concurred in the verdict and overruled a post-trial motion. He also filed a detailed report of the trial, as required by Rule 47 of this Court, in which he stated that the verdict was fully justified by the evidence. Direct review of death penalty verdicts is provided in this Court by T.C.A. § 39–2406.

I have carefully considered the assignments of error filed on behalf of appellants by able counsel and have reviewed the record in detail. In my opinion the verdict of the jury was fully justified and there were no mitigating circumstances whatever offered in evidence to justify our interfering with the conclusions of the jury. The jury found, and the evidence conclusively showed, the following statutory aggravating circumstances (T.C.A. § 39–2404(i)):

(1) The defendant was previously convicted of one or more felonies, other than the present charge, which involved the use of threat of violence to the person.

(2) The defendant knowingly created a great risk of death to two or more persons, other than the victim murdered, during this act of murder.

(3) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another.

(4) The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any first degree murder, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb.

(5) The murder was committed against any peace officer, corrections official, corrections employee or fireman, who was engaged in the performance of his duties, and the defendant knew or reasonably should have known that such victim was a peace officer, corrections official, corrections employee or fireman, engaged in the performance of his duties.

As required by T.C.A. § 39–2406, the Court has made a complete review of this case, and in accordance with the provisions of T.C.A. § 39–2406(c) I do not find that the sentence of death was imposed arbitrarily. In my opinion the evidence supports the jury's findings of aggravated circumstances and the absence of any mitigating circumstances sufficient to outweigh these. I do not believe that the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering the nature of the crime and of the defendant.

The principal assignment of error made on behalf of appellant is that the trial court erred in permitting the FBI official to testify to subsequent criminal activity of appellant following the homicide with which he is presently charged. Appellant did not deny or contradict in any manner the testimony of this officer. Appellant and his counsel had been notified prior to the sentencing hearing that this official would testify, and during the guilty plea phase of the case, the following questions were asked of appellant by the Court:

"THE COURT: You understand that, all right.

Do you understand that in the second phase of the trial that is before the jury on the question of punishment that the State may or probably will attempt to introduce evidence of any prior offenses that you had?

MR. COZZOLINO: I do.

THE COURT: And that they may attempt to introduce evidence as to any subsequent offenses that you had.

MR. COZZOLINO: I do.

Immediately following the guilty plea hearing and the impanelling of the jury, the District Attorney and counsel for appellant made opening statements to the jury. In the course of his opening statement, counsel for appellant gave notice that the appellant would rely upon certain mitigating factors or circumstances. His statement, in part, is as follows:

"But I think after you hear what Ralph Cozzolino suffered in his childhood, what his life has been like since that time, its not an excuse for what he has done, but I think it will be shown to you and proven to you that this man has not had it, a very easy life, and he has not had a situation where he has had any guidance when he was coming up. And here again we go back to the questions you spanked your children and you did certain things and you tried to show your children and teach them things, and these things were absent. These things are not present in Mr. Cozzolino's background and we'll show you those things."

The statutory provisions regarding the sentencing hearing are as follows:

"In the sentencing proceeding, evidence may be presented as to any matter that the court deems relevant to the punishment and may include, but not be limited to, the nature and circumstances of the crime; the defendant's character, background history, and physical condition; any evidence tending to establish or rebut the aggravating circumstances enumerated in subsection (i) below; and any evidence tending to establish or rebut any mitigating factors. Any such evidence which the court deems to have probative value on the issue of punishment may be received regardless of its admissibility under the rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements so admitted. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the state of Tennessee." T.C.A. § 39–2404(c)

T.C.A. § 39–2404(j) lists eight mitigating factors which may be considered by the jury, but expressly states that these are not exclusive, and that any mitigating circumstances may be shown. Among those listed in the statute are:

"(1) The defendant has no significant history of prior criminal activity."

The trial court overruled the objection of counsel for appellant to the testimony of the FBI official regarding subsequent criminal activity of appellant. He also overruled objections to some references to such activity made by appellant in a confession given to a state police officer. In his final instructions to the jury, the trial judge directed their consideration of this testimony in the following manner:

"Members of the jury, there has been testimony concerning criminal offenses committed subsequent to the offense to which the defendant has pleaded guilty. You are instructed that you shall not consider this testimony in your consideration of any of the aggravating circumstances alleged by the State, but you may only consider testimony concerning any subsequent offenses to the extent that this testimony may rebut a mitigating circumstance advanced by the defendant."

In my opinion the ruling and the instructions given by the trial judge to the jury were correct. It is the insistence of the appellant that the word "rebut" as used in T.C.A. § 39–2404(c) is used in a technical, formal and legalistic sense, so that the State may not, in its case "in chief" during the sentencing hearing offer any evidence tending to negate mitigating factors or circumstances until these have been affirmatively advanced by the accused during his presentation "in chief."

Counsel for appellant concedes that had the appellant affirmatively advanced any mitigating circumstance during his presentation of evidence, the State would have been entitled, by rebuttal evidence, to meet these. In effect it is conceded that the evidence of appellant's subsequent criminal

activity would have been admissible as rebuttal evidence, but it is contended that it was not admissible prior to the appellant's having offered evidence.

I do not believe that the sentencing hearing, as authorized by the present statutes, contemplates such a technical and formal presentation of evidence, nor do I believe that an accused could cut off the State from presenting a full picture of his character, background and history to the jury, by the simple device of not taking the stand or offering affirmatively any evidence of mitigating circumstances. The burden of proof rests upon the State to establish aggravating circumstances, and the jury must specifically find that these outweigh any mitigating circumstances before they are justified in imposing the death penalty. T.C.A. § 39–2404(f).

In his opening statement, defense counsel had given notice that appellant would attempt to establish mitigating circumstances. He expected to show the social history of appellant, his limited opportunities and background, as a mitigating factor in the assessment of punishment and as an appeal to the sympathy of the jurors. With the issues thus joined, in my opinion, the State was entitled to show affirmatively the absence of any mitigating circumstances, including a life and career of violent and dangerous criminal activity.

Counsel for appellant correctly urges that the death penalty can only be imposed upon a showing of one or more aggravating circumstances. The subsequent criminal conduct of the accused, at least as offered in the present case, did not involve statutory aggravating circumstances. It did, however, in my opinion, bear directly upon the absence of mitigating circumstances, both as set out in the statutes and as advanced by counsel. As previously stated, it is practically admitted by counsel for appellant that this testimony was relevant and would have been admissible as "rebuttal" testimony. Ordinarily, however, in the absence of any testimony whatever upon the subject of the criminal history of the accused, the jury would be entitled to assume that he had not

engaged in criminal activity prior to the sentencing hearing other than the offense charged in the indictment. If the accused could simply stand silent and not offer any evidence "in chief" upon the subject, he could, by that device, eliminate from consideration by the jury the actual facts and leave them with what might well be a false impression.

I recognize the authorities cited by counsel for appellant that proof of other crimes is ordinarily received with great caution and is usually not admissible except in limited circumstances to prove motive, identity, and the like. It must be recognized, however, that these authorities deal with evidence adduced at a trial of guilt or innocence, not with a sentencing hearing after guilt has been determined as in the present case. The provisions of T.C.A. § 39–2404(c) contemplate a broad and comprehensive hearing so that the jury may have all relevant information pertinent to their decision as to the imposition of punishment.

In the case of *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977), a somewhat similar issue was considered. In that case the Court dealt with the admissibility of evidence in a sentencing hearing after a plea of guilty. Defense counsel objected to the admission of prior convictions of the accused on the ground that the accused had not taken the stand in his own defense; hence, his character and reputation were not in issue. Holding that this contention was without merit, the Court said:

> "Evidence may be presented by the defendant and by the State with respect to any matter relevant to the issue of sentence."

These were said to include:

> ". . . a full description of any prior criminal record of the defendant, his reputation and character . . . ." 553 S.W.2d at 344.

In the case of *Gregg v. Georgia*, 428 U.S. 153, 203–204, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976), the Supreme Court of the United States said:

> "We think that the Georgia court wisely has chosen not to impose unnecessary re-

strictions on the evidence that can be offered at such a hearing and to approve open and far-ranging argument. [Citations omitted]. So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision."

In my opinion, the trial judge correctly admitted and instructed the jury concerning the evidence objected to, and the assignments of error pertaining thereto should be overruled.

Other assignments of error have been advanced by the appellant. Among these were alleged errors in failing to grant a continuance and in jury selection. These procedural errors, however, if any, were clearly waived by the subsequent plea of guilty submitted by appellant. *See Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *State ex rel. Edmondson v. Henderson*, 220 Tenn. 605, 421 S.W.2d 635 (1967). I have carefully examined the record, however, and do not find that these assignments of error, in any event, have merit or that any reversible error was committed.

Likewise, I find no merit in appellant's contentions that the death penalty constitutes cruel and unusual punishment under the Constitution of Tennessee. The United States Supreme Court has repeatedly rejected such contentions advanced under the federal constitution, and, in my opinion, the Tennessee Constitution contains no provisions which would prohibit the imposition of the death penalty under the terms, procedures and conditions set out in the 1977 statutes under which appellant was tried and convicted.

Accordingly, in my opinion, the judgment of the trial court and the sentence imposed pursuant thereto should be affirmed.

I am authorized to state that Mr. Justice ALLISON B. HUMPHREYS, sitting specially with the Court, concurs in this opinion.