IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JANUARY 1997 SESSION



FILED

October 7, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 02-C-01-9602-CR-00048 |
| Appellee, | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Chris B. Craft, Judge |
| HOLLIS G. WILLIAMS, | ) | |
| | ) | (Murder First Degree) |
| Appellant. | ) | |


FOR THE APPELLANT:

W. Mark Ward
Asst. Shelby County Public Defender
147 Jefferson, Suite 900
Memphis, TN  38103
(On Appeal)

Ronald S. Johnson
Asst. Shelby County Public Defender
201 Poplar Avenue, Suite 201
Memphis, TN  38103-1947
(At Trial)

Betty J. Thomas
Asst. Shelby County Public Defender
201 Poplar Avenue, Suite 201
Memphis, TN  38103-1947
(At Trial)

OF COUNSEL:

A C Wharton, Jr.
Shelby County Public Defender
201 Poplar Avenue, Suite 201
Memphis, TN  38103-1947

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN  37243-0497

Robin L. Harris
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN  38103-1947

James C. Beasley, Jr.
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN  38103-1947

Amy J. Weirich
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN  38103-1947


OPINION FILED: _____


AFFIRMED


Joe B. Jones, Presiding Judge

**O P I N I O N**

The appellant, Hollis G. Williams (defendant), was convicted of first-degree felony murder by a jury of his peers. The State of Tennessee sought the extreme penalty of death. However, the jury set his punishment at life without the possibility of parole. The defendant presents three issues for review. He contends (a) the evidence is insufficient, as a matter of law, to support his conviction for a murder committed during an attempt to commit robbery, (b) the trial court committed error of prejudicial dimensions by ruling his two convictions for attempt to commit robbery could be used to impeach him if he opted to testify in support of his defense, and (c) the trial court committed error of prejudicial dimensions by permitting the state to introduce victim impact testimony during the sentencing hearing. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court the judgment of the trial court should be affirmed.

The victim, Manop S. Thomas, was fifteen years of age and a sophomore in high school when he was fatally wounded by the defendant. He lived at home with his mother and three other siblings.

On the afternoon of January 31, 1994, the victim was en route to a residence on Redcliff Cove in the Frayser area of Memphis. While walking to his destination, he met Wordies Tate, a friend and classmate. Tate was riding his bicycle. He asked Tate to go with him to the Redcliff Cove residence. Tate agreed to accompany the victim. Tate rode his bicycle slowly as he and the victim proceeded to the victim's destination.

As Tate and the victim were crossing the street, a car coming from the opposite direction stopped. The defendant exited the vehicle and told the victim to come to the car. The victim knew the driver of the vehicle, Clifford Sims. He entered the vehicle through the back door on the passenger side of the car. A conversation ensued. Sims told the victim he would see him later. The victim and the defendant exited the car simultaneously. The defendant removed a .380 automatic pistol from his clothing.[1] He told the victim to "drop it off," meaning the victim should give him the Michigan starter jacket he was wearing. When the defendant reached for the hood attached to the jacket, the victim broke loose

_____

[1]The defendant also was armed with a .38 caliber pistol.

and ran away. The defendant followed the victim and began firing the .380 pistol at the victim. He fired approximately four shots. One projectile struck the victim in the left lower back. The projectile penetrated the left lung and struck the victim's heart. A pathologist testified the organs in the chest cavity were shifted to the right side of the victim. In summary, the victim died as a result of the gunshot wound and the complications it created.

The defendant left the situs of the killing in Sims's vehicle. He told Sims the victim should have "dropped it off" when he told him to do so. The defendant related to Sims he was going to either Chicago, Illinois or Detroit, Michigan. The defendant also expressed concern about Sims because he thought Sims was the only witness to the killing. The defendant did not know Tate also saw most of what occurred, and Tate could identify Sims's vehicle and the defendant. Tate witnessed most of what occurred on the date in question.

## I.

The defendant contends the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact that he was guilty of felony murder beyond a reasonable doubt. He argues the record is devoid of evidence that he was attempting to commit the crime of robbery when the killing occurred.

## A.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim.

2

App.), per. app. denied (Tenn. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.


## B.


The record establishes beyond a reasonable doubt the defendant was in the process of attempting to commit aggravated robbery when the killing occurred. Sims, a lifelong friend of the defendant, testified the defendant removed a .380 pistol from his clothing and attempted to take the starter jacket the victim was wearing. When the victim broke away and ran, the defendant followed the victim. He fired four or five projectiles as he pursued the victim. One of these projectiles struck the victim. The victim died as a result of the projectile striking him. In summary, the evidence is clearly sufficient to support

3

a finding by a rational trier of fact the defendant was attempting to commit aggravated robbery beyond a reasonable doubt. Tenn. R. App. P. 13(e); <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

This issue is without merit.

## II.

The defendant moved the trial court to rule upon the admissibility of two prior aggravated robbery convictions to impeach him if he testified in support of his defense. The trial court found the probative value of these felonies for impeachment outweighed the prejudicial effect the admission of these convictions may have upon the trier of fact. The defendant argues the similarity of his prior convictions to the offense for which he was being tried, killing the victim during an attempt to commit aggravated robbery, would be highly prejudicial.

The State of Tennessee may use a prior conviction to impeach an accused if the conviction meets the criteria established by Rule 609, Tennessee Rules of Evidence. According to this rule, a conviction may be used to impeach the accused if (a) the conviction was for a crime that is punishable by death or imprisonment in excess of one (1) year or a misdemeanor involving dishonesty or a false statement, (b) less than ten (10) years elapsed between the date the accused was released from confinement for the prior conviction and the commencement of the prosecution for the present offense, (c) the State of Tennessee gave reasonable written notice of the particular conviction it intends to use to impeach him, and (d) the trial court determines the probative value of the felony or misdemeanor on the issue of credibility outweighs its prejudicial effect on the trier of fact. <u>State v. Farmer</u>, 841 S.W.2d 837, 839 (Tenn. Crim. App.), <u>per</u>. <u>app</u>. <u>dismissed</u> (Tenn. 1992). In this case, the first three requisites, (a) through (c), have been satisfied. Thus, the only issue is whether the probative value of the aggravated robbery convictions outweighs the unfair prejudicial effect due to the similarity between the convictions and the offense alleged in the indictment.

In determining whether the probative value of the felony sought to be used to

4

impeach an accused outweighs its unfair prejudicial effect on the issue to be resolved by the jury, a trial court should (a) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction," and (b) "analyze the relevance the impeaching conviction has to the issue of credibility." N. Cohen, D. Paine, and S. Sheppeard, Tennessee Law of Evidence, § 609. 9 at p. 288 (2nd ed. 1990); see Farmer, 841 S.W.2d 839. When this analysis is applied to the conviction in this case, the trial court did not abuse its discretion by ruling the two aggravated robbery convictions could be used to impeach the defendant if he opted to testify in support of his defense.[2]

The mere fact a prior conviction of the accused is identical, or similar in nature, to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach an accused as a witness. See State v. Miller, 737 S.W.2d 556, 560 (Tenn. Crim. App.), per. app. denied (Tenn. 1987). The appellate courts of this state have held the offense of robbery is "highly probative on the credibility question," State v. Crank, 721 S.W.2d 264, 266 (Tenn. Crim. App.), per. app. denied (Tenn. 1986), because this crime involves dishonesty. See State v. Stafford, 670 S.W.2d 243, 245 (Tenn. Crim. App.), per. app. denied (Tenn. 1984). Thus, the appellate courts have held a conviction for robbery may be used to impeach an accused being tried for an offense involving robbery absent circumstances which require a different result. See State v. Goad, 692 S.W.2d 32, 37 (Tenn. Crim. App.), per. app. denied (Tenn. 1985); State v. Norris, 684 S.W.2d 650, 654 (Tenn. Crim. App. 1984), per. app. denied (Tenn. 1985); State v. Davis, 649 S.W.2d 12, 13 (Tenn. Crim. App. 1982), per. app. denied (Tenn. 1983); State v. Fluellen, 626 S.W.2d 299, 300 (Tenn. Crim. App.),per. app. denied (Tenn. 1981).

The consideration of this issue is strictly academic. The defendant testified at a jury-out hearing that he had no intention of testifying in support of his defense regardless of the trial court's ruling on the admissibility of his prior convictions.

This issue is without merit.

---

[2]It is a well-established rule of law that questions concerning the admissibility of evidence rest within the sound discretion of the trial court; and an appellate court will not interfere with the exercise of this discretion absent a clear abuse appearing on the face of the record. State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1577, 128 L.Ed.2d 220 (1994); State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); State v. Baker, 751 S.W.2d 154, 163 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

**III.**

The defendant contends the trial court committed error of prejudicial dimensions by permitting the State of Tennessee to "prejudice the jury with inflammatory victim impact evidence which was not relevant to any aggravating circumstance." He argues the jury may have sentenced the defendant to life rather than life without the possibility of parole. The State of Tennessee contends this evidence was properly admitted. The state argues the supreme court has adopted the rationale of <u>Payne v. Tennessee</u>, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

The state was permitted to elicit from the victim's aunt, Mary L. Teal, the following testimony over the objection of the defendant:

> Q. How many children did Ms. Thomas (the victim's mother) have?
>
> A. Six.
>
> Q. How many of them were living there at the home with her?
>
> A. With "Nopie" (the victim) it was four.
>
> * * * *
>
> Q. Of the four that were in the home with her, who was the oldest?
>
> A. Nopie.
>
> Q. And what were the ages of the other children?
>
> A. Oh, at the time, I think, eight, one year, and nine.
>
> Q. What type of relationship did Manop have with his younger brothers and sisters?
>
> A. Oh, very close.
>
> Q. Specifically, I believe the youngest?
>
> A. The baby.
>
> * * * *
>
> Q. Ms. Teal, you were describing this relationship that Manop Thomas had with his youngest sibling.

6

A.  They were very close.  A lot of people thought that he was the father of his brother, because they had that bound [sic] and he treated him that way.  And when you would see them out they would come in and say, is that your son?  And he would say, yeah.  And that's the way they were.

Q.  What type of effect has the death of Manop had on, specifically, this young child?

A.  Uh, he misses him and he knows he's not there anymore. He picks up his pictures, goes to them.  He won't allow anyone else to touch his pictures.  He calls his name often, and he's even picked up a lot of his characteristics.

Q.  What about the other brothers and sisters left at home, how has it affected them?

A.  John, he was under Nopie, he's -- in dealing with it -- he's more to himself, he's kind of like shut in.  And he's slowly starting to come out.

Neesy, she's the only girl.  Her and Nopie were close and she went through a lot of -- I guess of what you'd see in an adult, the stress that she went  through, it completely took all of her hair out.  And her nerves were just shot, and she had a lot of physical ailments behind it.

Q.  And Mrs. Thomas, what effect has this had on her?

A.  Emotional, physical -- to [sic] much to describe.  It comes and goes.  She has good days.  She has bad days.  Good physical days, bad physical days.  Good emotional days, bad emotional days.  Some days might be a good and a bad day. You just never know.  The baby call his name, and everybody could be having a good day at the time and it just turns it upside down and all around.  You just never know.  It's really just hour to hour instead of a day to day.

Q.  As a result of Ms. Thomas' testimony here in court the other day, was she physically able, or emotionally able to be here to testify as to what you're testifying to today?

A.  No, she wasn't.

Since Payne the supreme court has not addressed the admissibility of victim impact testimony pursuant to Tenn. Code Ann. § 39-13-204(c).  However, the supreme court has alluded to victim impact testimony.  See State v. Shepard, 902 S.W.2d 895, 902 (Tenn. 1995)(victim impact argument by state during rebuttal summation proper); State v. Bigbee, 885 S.W.2d 797, 811-12 (Tenn. 1994)(victim impact testimony is not precluded by either the federal or state constitution); State v. Hurley, 876 S.W.2d 57, 67 (Tenn. 1993), cert. denied, 513 U.S. 933, 115 S.Ct. 328, 130 L.Ed.2d 287 (1994)(victim impact evidence that

7

the victim "was the mother of five children and her father was a retired sergeant major who had served 26 years in the special forces as a Green Beret" held proper testimony); see also State v. Brimmer, 876 S.W.2d 75, 86 (Tenn. 1994), cert. denied 513 U.S. 1020, 115 S.Ct. 585, 130 L.Ed.2d 499 (1994); State v. Smith, 857 S.W.2d 1, 14 (Tenn. 1993), cert. denied, 510 U.S. 996, 114 S.Ct. 561, 126 L.Ed.2d 461 (1993); Edward Jerome Harbison v. State, Hamilton County No. 03-C-01-9204-CR-00125 (Tenn. Crim. App., Knoxville, May 21, 1996), per. app. denied (Tenn. November 12, 1996).

In State v. Clarence C. Nesbit, Shelby County No. 02-C-01-9510-CR-00293 (Tenn. Crim. App., Jackson, April 22, 1997), a panel of this Court concluded that victim impact testimony is not admissible pursuant to Tenn. Code Ann. § 39-13-204(c). In Nesbit this Court said:

> Under Tennessee's capital sentencing scheme, "[t]he only evidence which is relevant during sentencing phase. . . is that evidence which is relevant to establish or disprove the existence of aggravating circumstances or mitigating factors." State v. Black, 815 S.W.2d 166, 179 (Tenn. 1991)(citing Cozzolino v. State, 584 S.W.2d 765, 768 (Tenn. 1979)(emphasis added); Tenn. Code Ann. § 39-13-204(c). Any evidence that does not go to the proof of one or the other of those issues is irrelevant to the jury's deliberation. Cozzolino, 584 S.W.2d at 768. (Footnotes omitted).

Slip op. at 31-32.

Judge David G. Hayes, the author of Nesbit, set forth a scholarly dissertation on how victim impact testimony may affect the sentencing process to support the conclusion this testimony was not relevant to the sentencing process in death penalty sentencing hearings. However, a majority of the panel concluded the error was harmless beyond a reasonable doubt.

This Court concludes, as it did in Nesbit, the admission of this evidence constituted error. Judge Paul G. Summers and Judge Hayes are of the opinion the victim impact testimony introduced by the state constituted harmless error. Judge Joe B. Jones is of the opinion that while the jury spared the defendant a death sentence, the extensive nature of this testimony could have been the difference between a life sentence and the sentence imposed, life without the possibility of parole. Tenn. R. App. P. 36(b). Therefore, Judge

8

Jones believes the conviction should be affirmed, but this case should be remanded to the trial court for a new sentencing hearing.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:


(see separate concurring opinion)
PAUL G. SUMMERS, JUDGE


_____
DAVID G. HAYES, JUDGE