IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
(HEARD AT NASHVILLE)

STATE OF TENNESSEE,          )
                             )
          Appellee,          )     Hamblen County
                             )
v.                           )     Hon. Lynn W. Brown, Judge
                             )
LEONARD EDWARD SMITH,        )     Supreme Court
                             )     No. 03-S-01-9710-CC-00129
          Appellant.         )

FILED

May 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

DISSENTING OPINION

I respectfully dissent from that portion of the majority opinion which approves of the admission of victim impact evidence during the sentencing phase of the trial. Acknowledging the precedent established in Payne v. Tennessee, 501 U.S. 808, 827, 111 S. Ct. 2597, 2609, 115 L. Ed. 2d 720 (1991) that the admission of victim impact evidence does not per se violate the Eighth Amendment to the United States Constitution, I stated in dissent in State v. Nesbit, 978 S.W.2d 872, 903 (Tenn. 1998), cert. denied, ___ U.S. ___, 119 S. Ct. 1359 (1999), that

> Payne v. Tennessee, 501 U.S. 808, 111 S. Ct. 2597, 115 L. Ed.2d 720 (1991), controls, I agree with the majority's statement that victim impact evidence is admissible if adduced within the constraints of due process and Tenn. R. Evid. 403.

For the reasons stated below, I would hold that Article I, Section 8 of the Tennessee Constitution[1] affords a greater measure of

_____

[1]Tennessee Constitution, Article I, section 8, provides: "[t]hat no man shall be taken or imprisoned, or disseized of his

protection than the Eighth Amendment in this regard, and I am now of the opinion that the admission of victim impact evidence is unconstitutional unless its admission is thoughtfully controlled and carefully restricted. Accordingly, I would overrule State v. Payne, 791 S.W.2d 10 (Tenn. 1990), to the extent that it permits the unlimited (or vaguely limited) admission of victim impact evidence. In its place, I would impose narrow, definitive criteria similar to those established by New Jersey in State v. Muhammad, 678 A.2d 164 (N.J. 1996). Thus, Tenn. Code Ann. § 39-13-204(c)(Supp. 1998)[2] remains constitutional so long as applied to carefully control and thoughtfully restrict the admission of victim impact evidence as herein outlined.

It is indisputable among civilized societies that every death includes the potential to devastate those left behind--be they relatives, friends, or acquaintances. This has even more emphasis when human life is snuffed out by means of criminal conduct. And every person has value; every person's death

---

freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

[2]Tenn. Code Ann. § 39-13-204(c)(Supp. 1998) states that: "[t]he court may permit a member or members, or a representative or representatives of the victim's family to testify at the sentencing hearing about the victim and about the impact of the murder on the family of the victim and other relevant persons. Such evidence may be considered by the jury in determining which sentence to impose. The court shall permit members or representatives of the victim's family to attend the trial, and those persons shall not be excluded because the person or persons shall testify during the sentencing proceeding as to the impact of the offense."

diminishes mankind.[3]  But as devastating as one's death is to family, friends, and society, that effect should not be considered in the determination of the sentence to be imposed upon the perpetrator.  Thus, to place emphasis on the merit and characteristics of the victim and his or her friends and family serves only to invert the traditional statutory function that jurors perform in the sentencing process, violates evidentiary rules of relevance, and runs counter to fundamental goals of punishment.

The General Assembly, in enacting Tenn. Code Ann. § 39-13-204(i)(1997 & Supp. 1998), has provided ample criteria for the determination of punishment.  A careful review of the juror's role in the capital sentencing scheme underscores the uncertainty that victim impact evidence insinuates into the previously refined statutory sentencing process.

Absent the admission of victim impact testimony, the jury's sentencing decision is controlled by the statutory aggravating and mitigating factors.  If the jury determines that the State has proven beyond a reasonable doubt that the relevant aggravating factors outweigh any mitigating factors, then "the sentence <u>shall</u> be death." Tenn. Code Ann. § 39-13-204(g)(1)(Supp. 1998)(emphasis added).  But if the jury determines that the State has not proven that the relevant aggravating factors outweigh any mitigating factors, then "the jury <u>shall</u>, in its considered

---

[3]This thought was expressed by John Donne in <u>Devotions Upon Emergent Occasions</u>, Meditation XVII (1624).

3

discretion, sentence the defendant either to imprisonment for life without possibility of parole or imprisonment for life." Tenn. Code Ann. § 39-13-204(f)(2)(Supp. 1998)(emphasis added). Thus, the jury's role in capital sentencing is expressly limited to considering whether or not the aggravating factors outweigh any mitigating factors. That is why "evidence is relevant to the punishment, and thus admissible, only if it is relevant to an aggravating circumstance, or to a mitigating factor raised by the defendant." Cozzolino v. State, 584 S.W.2d 765, 768 (Tenn. 1979).

The particular "value" of the victim and the amount of emotional damage and loss suffered by surviving family and friends are not statutory aggravating factors under Tenn. Code Ann. § 39-13-204(i).[4] Additionally, one cannot even suggest that they are implicitly included in the list. None of the statutory aggravating factors differentiates between the appropriateness or inappropriateness of the death penalty based on the perceived value of the victim's life as reflected in the testimony of the surviving friends or relatives. Thus, under our statutory scheme, how can we say that victim impact evidence is relevant to the issue of punishment? We cannot. We should not.

And yet, in apparent acknowledgment that victim impact evidence bears no relevance to any aggravating factor, the majority has heretofore condoned its admission as evidencing the "nature and

---

[4]As a review of Tenn. Code Ann. § 39-13-204(i) demonstrates, the statutory aggravating factors focus on the defendant's criminal history as well as the particular circumstances of the crime at issue.

circumstances of the crime." See State v. Nesbit, 978 S.W.2d at 890. The majority attempts to limit the victim impact evidence to information which could fall within this characterization. Majority Opinion at ___ [slip. op. at 17]; see also, State v. Nesbit, 978 S.W.2d at 891 (discussing those limits). But, even as limited by the majority, the type of evidence admissible remains wholly undefined, amorphous, and unduly prejudicial, a result prohibited by Article I, section 8 of the Tennessee Constitution.

I fully understand the motivation of those who espouse the admission of victim impact evidence in capital sentencing hearings and feel much sensitivity to the pain caused to those whose loved ones are lost in senseless killings. But in my view, because victim impact evidence is not relevant to any of the aggravating factors, or to the nature and circumstances of the crime, its use during the sentencing hearing can only serve to divert the jury's attention from its primary role--to determine the defendant's punishment for the crime committed considering factors of aggravation and mitigation. Such diversion demeans our capital sentencing scheme and causes it to be unreliable, inaccurate, and arbitrary, and thereby unconstitutional. See Saffle v. Parks, 494 U.S. 484, 493, 110 S. Ct. 1257, 1263, 108 L. Ed. 2d 415 (1990). As I stated in Nesbit,

> Generally, victim impact evidence is unsettling because its use encourages the jury to quantify the value of the victim's life and urges the finding that murder is more reprehensible if the victim is survived by a bereaved family than if the victim had no family at all.

5

State v. Nesbit, 978 S.W.2d at 903.  This shift in focus from the crime and the defendant to the surviving family and the victim is the main criticism leveled at victim impact evidence.

By displaying grieving friends or family members (or noting their absence) to jurors, victim impact evidence invites jurors to deem it a greater crime (and thereby deserving of greater punishment) to kill someone whose friends or family, or both, are willing and able to testify during the sentencing phase about their grief.

Furthermore, the use of victim impact evidence tempts jurors to become mesmerized by the concept of "victimology." Through this concept, the issue of the deceased victim's "innocence" is silently woven into the sentencing equation. Professor Lynne N. Henderson's description of "victimhood" is appropriate.

> [T]he word "victim" has come to mean those who are preyed upon by strangers:  "Victim" suggests a nonprovoking individual hit with the violence of "street crime" by a stranger.  The image created is that of an elderly person robbed of her life savings, an "innocent by-stander" injured or killed during a holdup, or a brutally ravaged rape victim.  "Victims" are not prostitutes beaten senseless by pimps or "johns," drug addicts mugged and robbed of their fixes, gang members killed during a feud, or misdemeanants raped by cellmates. . . .  In short, the image of the "victim" has become a blameless, pure stereotype, with whom all can identify.

6

"The Wrongs of Victim's Rights," 37 Stan. L. Rev. 937, 951 (1985).

Thus, as an extra-legal consideration, jurors are lured into determining whether the victim and his or her family fit the stereotype of "innocent victims." If they do, this concept entices jurors to vary punishment according to the perceived "innocence" of the victim. Thus, rather than orienting punishment to the perpetrator, punishment is oriented toward the victim.

In the same vein, victim impact evidence informs the jurors about characteristics of the victim which easily translate into "value of life" assessments, driven by evidence of the victim's accomplishments, support of family, civic endeavors, and unfulfilled dreams. These allusions to the victim's financial condition or social attainment are simply inappropriate for the jury to consider in determining the sentence.

And finally, it has been suggested that the admission of victim impact evidence runs counter to the theory underlying the principles of punishment. Victim impact evidence provides jurors with the opportunity to vary punishment according to the degree of vengeance sought by family or friends. And yet under our statute, the purpose of punishment is "to prevent crime and promote respect for the law." Tenn. Code Ann. § 40-35-102(3)(1997). Accordingly, vengeance has no place in the determination of the appropriate sentence. Indeed, vengeance in the sentencing process breeds disparity, and disparity is an unwelcome intruder into that meticulous process.

The Supreme Court of New Jersey has devised a protocol intended to reduce the possibility that jurors will misuse victim impact evidence. State v. Muhammed, 678 A.2d at 179. Under this protocol, before victim impact evidence is deemed admissible, the following must be accomplished:

> The defendant should be notified prior to the commencement of the penalty phase that the State plans to introduce victim impact evidence if the defendant asserts the catch-all factor.[5] The State shall also provide the defendant with the names of the victim impact witnesses that it plans to call so that defense counsel will have an opportunity to interview the witnesses prior to their testimony. The greater the number of survivors who are permitted to present victim impact evidence, the greater the potential for the victim impact evidence to unduly prejudice the jury against the defendant. Thus, absent special circumstances, we expect that the victim impact testimony of one survivor will be adequate to provide the jury with a glimpse of each victim's uniqueness as a human being and to help the jurors make an informed assessment of the defendant's moral culpability and blameworthiness. Further, minors should not be permitted to present victim impact evidence except under circumstances where there are no suitable adult survivors and thus the child is the closest living relative.
>
> Before a family member is allowed to make a victim impact statement, the trial court should

---

[5]Under the New Jersey statute, the defendant may introduce evidence concerning statutory mitigating factors, including what the court refers to as a "catch-all factor" which is "[a]ny other factor which is relevant to the defendant's character or record or to the circumstances of the offense." N.J. Stat. Ann. § 2C:11-3(b)(5)(h) (Supp. 1998).

ordinarily conduct a Rule 104 (formerly Rule 8) hearing, outside the presence of the jury, to make a preliminary determination as to the admissibility of the State's proffered victim impact evidence. The witness's testimony should be reduced to writing to enable the trial court to review the proposed statement to avoid any prejudicial content. The testimony can provide a general factual profile of the victim, including information about the victim's family, employment, education, and interests. The testimony can describe generally the impact of the victim's death on his or her immediate family. The testimony should be factual, not emotional, and should be free of inflammatory comments or references.

. . . During the preliminary hearing, the trial court should inform the victim's family that the court will not allow a witness to testify if the person is unable to control his or her emotions. That concern should be alleviated by our requirement that the witness be permitted only to read his or her previously approved testimony. Finally, the court should also take the opportunity to remind the victim's family that the court will not permit any testimony concerning the victim's family members' characterizations and opinions about the defendant, the crime, or the appropriate sentence. Finally, the trial court should inform the prosecutor that any comments about victim impact evidence in his or her summation should be strictly limited to the previously approved testimony of the witness.

Id. at 180.

These clear rules stand in sharp contrast to the thin limitations on admissibility imposed in <u>Nesbit</u>. In <u>Nesbit</u>, the Court stated as follows:

> Generally, victim impact evidence should be limited to information designed to show those unique characteristics which provide a brief glimpse into the life of the individual who has been killed, the contemporaneous and prospective circumstances surrounding the individual's death, and how those circumstances financially, emotionally, psychologically or physically impacted upon members of the victim's immediate family. . . . Of these types of proof, evidence regarding the emotional impact of the murder on the victim's family should be most closely scrutinized because it poses the greatest threat to due process and risk of undue prejudice, particularly if no proof is offered on the other types of victim impact. . . . ("It would be very difficult to reconcile a rule allowing the fate of a defendant to turn on the vagaries of particular jurors' emotional sensitivities with our longstanding recognition that, above all, capital sentencing must be reliable, accurate, and nonarbitrary.") However, there is no bright-line test, and the admissibility of specific types of victim impact evidence must be determined on a case-by-case basis.

<u>State v. Nesbit</u>, 978 S.W.2d 872, 891 (Tenn. 1998)(footnotes & citations omitted). Unlike New Jersey, this Court has not limited the number of victim impact witnesses allowed to testify; nor has it furnished guidance for using witnesses who are minors. Unlike New Jersey, this Court has not limited the victim impact testimony to factual rather than emotional information; to the contrary, it specifically allows evidence of the "emotional impact of the

10

murder." The mere suggestion that the trial court "closely scrutinize" emotional testimony in no way guides trial courts in implementing this suggestion. And finally, unlike New Jersey, this Court does not require that the victim impact evidence be reduced to writing and read by the witness at trial, a procedure which would go far to prevent that unconstitutional result noted in Nesbit--"allowing the fate of a defendant to turn on the vagaries of particular jurors' emotional sensitivities."

I would hold that the admission of victim impact evidence during the sentencing phase of a capital punishment trial is unconstitutional under Tennessee law unless admitted with precise definition and clear limitation. As heretofore stated, the adoption of procedures such as those used by the State of New Jersey would provide such definition and limitation as would ensure the constitutionality of victim impact evidence in Tennessee.

I would further hold that victim impact testimony, when admitted outside of the procedure herein espoused, requires a strict harmless error review. It is a simple matter, especially in cases with heinous facts such as the one under submission, to give short shrift to the harmless error analysis and find, based on those facts, that the error was harmless. This is easily illustrated by the language in Payne.

> Once [the perpetrator's] identity was established by the jury's verdict, the death penalty was the only rational punishment available. Thus, the State's argument was harmless beyond a reasonable doubt. (emphasis added.)

11

<u>State v. Payne</u>, 791 S.W.2d at 19.  On the contrary, the imposition of punishment as well as any harmless error analysis should, in my view, include a painstaking, intensely thorough scrutinization of the facts and law.

In the case at bar, the victim's daughter was allowed to testify not only about her parents' background, but also about the suffering of her father, the fact that the murder had caused her family "problems for eleven years," and that she would "go to [her] grave with it."  Considering this evidence, I conclude that the error more probably than not affected the judgment and prejudiced the judicial process.  <u>See</u> Tenn. R. App. P. 36(b).  To be sure, I draw no conclusions regarding the penalty imposed in this case; I would hold only that a jury should be allowed to reconsider the penalty after the procedures herein suggested have been implemented.  Only by such strict limitation of this testimony can we avoid transgressing on a defendant's constitutional right to a fair determination of punishment based on the relevant aggravating factors.

Accordingly, I would remand this case for a new sentencing hearing conducted in a manner consistent with the discussion herein contained.

_____
Adolpho A. Birch, Jr., Justice

12