# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## SEPTEMBER 1999 SESSION

FILED

March 14, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| STATE OF TENNESSEE, | ) |
| Appellee, | ) C.C.A. NO. W1998-00634-CCA-R3-DD |
| | ) |
| VS. | ) SHELBY COUNTY |
| | ) |
| | ) HON. JOSEPH B. DAILEY, JUDGE |
| VINCENT C. SIMS, | ) |
| | ) |
| Appellant. | ) (Especially Aggravated Burglary and |
| | ) First Degree Murder - |
| | ) Death Penalty) |

## CONCURRING OPINION

I concur in most respects with the excellent analysis in the majority opinion. However, I disagree with the analysis of the state's introduction and use of prior non-violent convictions during the sentencing phase. I believe the introduction of these prior non-violent convictions was error, although I further conclude it was harmless error.

I do not interpret Tenn. Code Ann. § 39-13-204(c) as broadly as the majority. I disagree with the assertion that "whether the admission of the prior conviction was proper under Rule 405 would simply not be relevant." I am not prepared to state that the Tennessee Rules of Evidence are irrelevant in a death penalty sentencing hearing.

I also disagree with the majority opinion's conclusion that the father's testimony opened the door for the introduction of evidence relating to the prior non-violent convictions for misdemeanor theft and aggravated burglary. The father's testimony was simply that "Vincent was a good child. Good one." When asked what he meant by "good," the father stated "[h]e wouldn't disrespect me or his mother." The father then immediately continued by referring to the defendant's childhood. This did not open the door to the introduction of prior convictions for these non-violent offenses.

*See generally* Cozzolino v. State, 584 S.W.2d 765, 768 (Tenn. 1979). At the very least, the probative value of these prior non-violent convictions was substantially outweighed by the danger of unfair prejudice. *See* Tenn. R. Evid. 403.

1

The state's use of the prior misdemeanor theft and aggravated burglary was further compounded by its erroneous use of these same prior convictions when cross-examining the defendant's remaining three witnesses. These witnesses were the defendant's two aunts and brother. Their direct testimony was limited, describing defendant's close-knit and supportive family and his behavior while incarcerated. The state, in an apparent attempt to impeach each of these witnesses, erroneously asked each witness about the defendant's prior misdemeanor theft and aggravated burglary convictions. During the cross-examination of one witness, the state on at least four separate occasions asked if the witness believed the defendant to be a "dangerous" person. The witness was also asked if she had "heard he's been convicted of shooting two people before." The contention that these questions were properly allowed to rebut two mitigating factors (supportive family, model prisoner while incarcerated) is, in my view, without merit.

Of grave significance was the absence of a jury instruction on the proper use of this alleged impeachment evidence. The trial court was required to instruct the jury to consider this evidence not for its truth, but rather to evaluate the credibility of the witnesses. *See* State v. Nesbit, 978 S.W.2d 872, 883 (Tenn. 1998). The absence of limiting instructions allowed the jury to consider this evidence in a substantive manner.

The final argument of the state further compounded the problem since the state repeatedly referred to the misdemeanor theft and aggravated burglary convictions. A recurring theme in the state's final argument was defendant's "continuing series of escalation, crimes getting worse, and worse, and worse... He's stealing, he's burglarizing, and he is shooting [the victim] in the sanctity of his home." This theme of escalating crime, which incorporated the theft and aggravated burglary convictions, was emphasized approximately ten times in the state's final argument. Relying upon the prior convictions, the state on three occasions referred to the sentencing hearing as "graduation day."

Whether these errors were harmless presents a very close issue. However, in spite of the state's improper introduction and use of the prior non-violent convictions, I reluctantly conclude the error was harmless. The jury found four aggravating circumstances. There were two prior violent felony convictions that could properly be considered as prior felonies involving the use of violence. The strength of the

2

aggravating circumstances is such that I conclude the jury would have reached the same result without the erroneous admission and use of this evidence.

I concur in the result.

_____

**JOE G. RILEY, JUDGE**