**STATE of Tennessee, Appellee,**

v.

**Charles A. NORRIS, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 3, 1984.

Permission to Appeal Denied Jan. 28, 1985.

Lionel R. Barrett, Jr., Barrett & Redick, John E. Rodgers, Jr., Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Jack Seaman, W.E. Barnard, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

TATUM, Judge.

The defendant, Charles A. Norris, was convicted of first degree murder and armed robbery and sentenced to concurrent sentences of life and 60 years, respectively. On this appeal, he presents several issues which we find to be without merit.

The defendant does not attack the sufficiency of the evidence. The State's principal witness was a 24-year-old woman named Kathy Payne. Prior to the murder, Ms. Payne was employed at Aquarius Industry in Nashville where the victim, James Clifton Carpenter, was a supervisor. Ms. Payne had visited in the victim's house

on several occasions and had spent some nights there with the victim.

About two weeks before the crime was committed, Ms. Payne began living with Norris, Norris' wife Gwen, and Danny Ray Sharp. These four people, who used drugs almost every day, obtained the money to sustain their habit by committing burglaries. On the night the instant crime occurred, Norris, Sharp and Ms. Payne had been using drugs and planning to burglarize the victim. Their plan was that Ms. Payne would detain the victim while her two accomplices would steal guns and other property. Before leaving their apartment, in the presence of the defendant and Ms. Payne, Sharp got a pistol. They also took socks to wear on their hands.

Ms. Payne first entered the house and occupied the victim in the kitchen. Contrary to plans, the two men entered the kitchen and Sharp held the pistol on the victim. They ordered Ms. Payne to lie on the floor and they took the victim to the hallway where they forced him to lie on the floor. Before going to the basement, the defendant obtained an extension cord with which the victim was bound. The two men then took the victim to the basement. The defendant came back upstairs while Sharp remained in the basement and Ms. Payne and the defendant began ransacking the house. Sharp called Norris back to the basement to help him do something. When Norris came back upstairs he looked sick and told Ms. Payne not to go into the basement. At about this point, she heard the victim say, "You're killing me." She then heard "gargling or drowning or something."

Ms. Payne testified that Sharp forced her into the basement where she saw the victim in a puddle of blood. Sharp told her that the same thing would happen to her if she did not keep her mouth shut. All three of them then returned to the main floor and stole a television set, some guns, a pocketbook, and a jar of pennies. Sharp took this property to their apartment in the victim's truck. Norris and Ms. Payne walked back to their apartment.

The victim's body was found in the basement in a puddle of blood. His hands were tied in front of him with extension cords. A tube sock had been used as a gag. A large knife was embedded in his back. A heavy wrench was found with human hair on it. The victim had died from four stab wounds in the body and at least two blows to the head.

The testimony of Ms. Payne was contradicted by the defendant and Sharp. The defendant testified that they had not discussed committing any crime upon the victim. He denied being in the house when the victim was killed, and testified that when he entered the house Ms. Payne, who was washing blood from her hands, told him that if he mentioned anything he and his wife would be the next to die. Sharp likewise testified that they had not discussed burglary prior to going to the victim's house, and that the defendant did not enter the house until after the actual robbery and a scuffle leading to the victim's death. Since the sufficiency of the evidence is not questioned and because the jury accredited the testimony of the State's witnesses, we will not further detail the evidence. We do observe however that the evidence meets the standard required by Rule 13(e), T.R.A.P.

■ In the first issue, the defendant says that T.C.A. § 39–2–202(a) is unconstitutional insofar as it defines first degree murder as a murder committed in the perpetration of certain felonies named in the statute. He asserts that malice or specific intent is constitutionally required for a conviction. Without examining the correctness of this assertion, we note that T.C.A. § 39–2–201 defines "murder generally" and provides that either express or implied malice aforethought is essential to both first and second degree murder. If the offense is committed in the perpetration of a felony designated in § 39–2–202(a), the elements of malice, deliberation and premeditation are implied. *Tosh v. State,* 527 S.W.2d 146 (Tenn.Crim.App.1975).

■ The defendant cites *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), for the proposition that the felony/murder statute violates State and federal due process. The *Enmund* case does not support this contention. The case holds only that the death penalty is cruel and unusual punishment when imposed upon a robber who did not kill, attempt to kill, intend to participate in or facilitate a murder. *Enmund* treated a felony/murder statute as being valid. We find no merit in this issue.

In the next two issues, the defendant complains that the State was permitted to qualify the jury with regard to the death penalty. He says that *Enmund v. Florida, supra,* clearly prohibited the imposition of the death penalty in his case. He further claims that the State was not in good faith in seeking the death penalty but sought it only to make "the jury think that it was a much more serious case than it really was," and to exclude jurors who would not impose the death penalty.

■ We find no reversible error occurred from the trial court allowing the instant case to go to the jury as a capital case. First, the defendant Norris was not nearly as far removed from the murder in the case at hand as was the defendant in *Enmund v. Florida*. In the *Enmund* case, the defendant remained in the automobile while two accomplices attempted to rob an elderly couple. One of the victims shot one of Enmund's accomplices and the accomplices shot and killed both victims. Enmund was not present, had no knowledge of the homicides and clearly did not participate in them. In the case at bar, there was evidence that the defendant and Sharp participated in the assault upon the victim with the pistol. The defendant assisted in binding the victim's hands and forcing him into the basement. While Sharp was doing something to the victim, the defendant went into the basement where something was taking place that made him sick. We do not agree that there was "clear evidence indicating that the death penalty could not be imposed." Nor do we agree that the entire record indicates that the State did not act in good faith in seeking the death penalty.

Moreover, the death penalty was not imposed. The defendant asks us to take judicial notice that studies reveal that jurors who oppose the death penalty more often acquit. This we decline to do. We have no knowledge of any such studies and might well disagree with them if we did. We agree with the United States Supreme Court's statement in *Witherspoon v. Illinois*, 391 U.S. 510, 517–518, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) that

> "We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction."

The defendant states that the trial court erred in denying his motion to be given an arrest history of the State's witness, Kathy Payne. The defendant made a pretrial request for the arrest history of the witness pursuant to T.C.A. § 40–32–101(c)(3). T.C.A. § 40–32–101 provides for the removal and destruction of all public records when a person, who has been acquitted or otherwise discharged without conviction after arrest, petitions the court for expunction of such records. The statute on its face excludes arrest histories and other records maintained for law-enforcement purposes from expunction. § 40–32–101(b).

The record does not indicate whether or not Ms. Payne ever petitioned for the expunction of arrest records. However, the record expressly and affirmatively reveals that defense counsel was aware of all arrests of this witness of which the State had knowledge.

■ Moreover, evidence of arrest without conviction, absent extraordinary circumstances, is immaterial for impeachment or any other purpose. *State v. David Earl Miller*, 674 S.W.2d 279 (Tenn.1984); *State v. Morgan*, 541 S.W.2d 385 (Tenn.

1976). No extraordinary circumstance that would make the arrest record material is shown. If the trial court erred in refusing to order the State to furnish the defendant with a copy of the witness's arrest record, then the error is obviously harmless.

In the next issue, the defendant complains that he was denied leeway in cross-examining Kathy Payne regarding promises of leniency made to her by the State in exchange for her testimony. He says that there were two misdemeanor convictions for which she was given a suspended sentence and that she was given special treatment when she was not required to serve these sentences.

■■■ The witness was fully questioned about promises made to her in return for her testimony. She was a codefendant in this case and admitted that he trial was severed from that of Norris and that her truthful testimony would be considered in the disposition of her case. She denied being aware of any special treatment in any of the other cases pending against her, including the two misdemeanor cases. No proof was offered to show that Ms. Payne's testimony in this regard was untruthful or mistaken. An accused has the right to explore on cross-examination promises of leniency made by the prosecution to prosecution witnesses. *State v. Hamilton,* 628 S.W.2d 742 (Tenn.Crim.App.1981). The defendant was not denied this right. This issue is meritless.

Defendant says the trial court erred under *State v. Morgan,* 541 S.W.2d 385 (Tenn. 1976), in allowing the State to impeach his testimony by showing prior armed robbery convictions. Defendant bases this assertion on two grounds: (1) the prior crimes were so similar to this one that the danger of prejudice was too great (see *Long v. State,* 607 S.W.2d 482 (Tenn.Crim.App. 1980)); (2) the crime of armed robbery has no bearing on credibility and should have been excluded.

■■ In *State v. Fluellen,* 626 S.W.2d 299 (Tenn.Crim.App.1981), this court held that robbery is a form of stealing which is dis-

honest conduct and can therefore be used to impeach the credibility of a testifying defendant without the necessity of the trial judge weighing probative value against prejudicial effect. The *Long* case cited by defendant, was dealing with the prior crime of murder which does not involve dishonesty and is subject to the balancing test of probative value versus prejudicial effect. This issue is overruled.

The defendant next claims that he was subjected to double jeopardy when convicted of both first degree murder and armed robbery. He cites *Acres v. State,* 484 S.W.2d 534 (Tenn.1972) for the proposition that double jeopardy would bar a conviction for both murder and robbery arising out of the same transaction. Secondly, defendant alleges his murder conviction was essentially a felony/murder conviction and thus conviction for both the murder and underlying felony are barred. See *Briggs v. State,* 573 S.W.2d 157 (Tenn.1978).

■■ The *Acres* case was decided when the "same transaction" test was generally regarded as the test to be applied in determining identity of offense problems. In *State v. Black,* 524 S.W.2d 913 (Tenn.1975), the "same transaction" test was rejected. In *Briggs v. State, supra,* the Supreme Court held that whether both a felony/murder conviction and a conviction for the underlying felony may both stand is dependent upon the indictment. It was held that if the indictment for murder upon which the jury found the defendant to be guilty charges felony/murder, then both convictions cannot stand. If the indictment for which the defendant is convicted of murder charges murder in the common law form, then both convictions may stand. This rule was apparently followed by the Supreme Court in *State v. Johnson,* 661 S.W.2d 854 (Tenn.1983). In the instant case, the indictment is in common law form, expressly charging that the murder was committed "feloniously, willfully, deliberately, premeditatedly and maliciously." We therefore hold both convictions may stand without violating the defendant's rights against double jeopardy.

Finally, the defendant insists that the trial court erred in refusing the requested instruction to charge the jury as to the offense of accessory after the fact. The defendant was not indicted for being an accessory after the fact and this offense is not a lesser included offense. The trial judge therefore properly refused the request for this instruction. *State v. Hoosier,* 631 S.W.2d 474, 476 (Tenn.Crim.App. 1982).

The judgment of the court below is affirmed.

DUNCAN and CORNELIUS, JJ., concur.