## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

FILED

March 31, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 03C01-9403-CR-00124 |
| Appellee | ) | |
| | ) | SULLIVAN COUNTY |
| vs. | ) | |
| | ) | Hon. ARDEN L. HILL, Judge |
| SCOTT E. FAIN, | ) | (Sitting by Designation) |
| | ) | |
| Appellant | ) | (Esp. Aggravated Robbery) |

For the Appellant:

**Raymond C. Conkin, Jr.**
Attorney at Law
152 Broad Street, Suite 207
Kingsport, TN  37660

For the Appellee:

**Charles W. Burson**
Attorney General and Reporter

**Clinton J. Morgan**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**H. Greeley Wells, Jr.**
District Attorney General

**Phyllis Miller and David Overbay**
Asst. District Attorneys General
Blountville, TN  37617

OPINION FILED: _____

AFFIRMED

PER CURIAM

## OPINION

The appellant, Scott E. Fain, was indicted by the Sullivan County Grand Jury on one count of especially aggravated robbery, a class A felony.[1] The appellant was convicted by a jury of the lesser offense of robbery, a class C felony, and received a sentence of nine years confinement as a range II offender. In this appeal as of right, the appellant challenges (1) the sufficiency of the convicting evidence and (2) whether the trial court erred by failing to instruct the jury on the offense of accessory after the fact.

After a review of the record, we affirm the judgment of the trial court.

## Background

Around 7:00 p.m. on the evening of January 25, 1993, Gene Hammonds, a cab driver for Gilliam Cab Company in Kingsport, was dispatched to 232 Gale Street which is located in the Bloomingdale area of Kingsport. The cab was dispatched at the request of Clint Jennings who, at the time, was residing at the Gale Street address. Also present was the appellant who was visiting with Jennings. The two had spent most of the afternoon consuming alcohol. At some point, Jennings decided to visit a former girlfriend and reclaim a ring which he had previously given to her. The Gilliam Cab Company was then called. Before the cab arrived, Jennings obtained a claw hammer from his bedroom and a butcher knife from the kitchen. Both weapons were concealed under his clothing. Jennings testified that the appellant was unaware that he possessed these weapons. Upon arrival of the cab, Hammond was instructed to drive to Fletcher's Pool Hall on Dale Street. The

---

[1] The appellant and a co-defendant, Clint Jennings, were jointly indicted for this offense. Prior to the appellant's trial, the co-defendant pled guilty to the offense of especially aggravated robbery.

appellant sat in the front passenger seat; Jennings sat in the back seat directly behind the driver. After both entered the cab, Hammond related that, "I knew something wasn't right because he [the appellant] wouldn't look at me." Shortly after leaving the Gale Street address, Jennings began beating the driver in the back of his head with the hammer. As a result of the blows, Hammond sustained four one-inch lacerations to his head which required medical attention. Frightened and in pain, Hammond quickly stopped the car and jumped out with the motor still running. As he was fleeing from the cab, Hammond heard Jennings say "kill the SOB." Although Hammond conceded that the appellant never hit or touched him during the course of the robbery, he testified that the appellant "slid over on the driver's side when [Jennings] started hitting me." At trial, Jennings testified that the appellant had no knowledge of nor did he participate in the robbery. Moreover, he stated that the appellant repeatedly requested to be let out of the cab. Hammond contradicted Jennings' testimony in this regard. He stated that he never heard the appellant tell Jennings to stop the attack nor ask to be let out of the cab.

Once out of the cab, Hammond went to a nearby house for assistance but was unsuccessful. He then proceeded to run across the street to another house, where the resident telephoned the police. While Hammond was waiting for the police to arrive, he observed his cab coming back down the road toward him at a slow speed. Standing approximately within ten feet and under bright streetlights, Hammond identified the appellant as the person driving his cab as it passed by him. He observed Jennings in the passenger side of the front seat.

A report of the theft of the cab was dispatched to law enforcement officers patrolling in the area. Trooper Jackie Watkins of the Tennessee Highway Patrol observed a cab occupied by two males stopped on the side of the road. Watkins turned his cruiser around to begin pursuit. Soon thereafter, a Sullivan County deputy also joined in the pursuit. At this point, Watkins stated that the cab quickly

accelerated.  He stated, "they was [sic] absolutely flying, as a matter of fact, they went airborne. . . ."  Watkins testified that it appeared that the two men were attempting to "ditch" the car, "they would slow down, and then . . .they would take off. . . ."  The suspects finally were able to "ditch" the cab.  In Watkins' attempt to strategically use his cruiser to block the driver from exiting the vehicle, the cruiser collided with the driver's side door of the cab.  Despite this attempt, the two suspects were able to flee on foot.  At this point, it was determined that Jennings, who was apprehended at the scene by another officer, was the driver of the cab.  Despite an encounter with a canine officer and his tracking dog, the appellant managed to escape.  The appellant made his way to the home of Clifford Brady and informed Brady that "the law" had "told him not to be out . . . because they was [sic] hunting someone."  The appellant spent the night at Brady's home and, the next day, accompanied Brady and his mother to the grocery store.  Presumably during this excursion, the appellant informed Brady that the police were looking for Jennings.  The evidence at trial established that the appellant's home was one-half mile closer to the site of the abandoned cab than Brady's residence.  The appellant was not apprehended until several weeks later.

## I.  Sufficiency of the Evidence

The appellant contends that the evidence was insufficient to convict him of the offense of robbery.  Specifically, he argues that, because he had no prior knowledge of the planned attack and because he did not actively participate in the robbery, he cannot be held criminally responsible for the acts of Clint Jennings.  Moreover, he asserts that the inconsistencies between the testimony of the witnesses at trial makes it impossible for a rational trier of fact to have found the essential elements of the crime to have been present beyond a reasonable doubt.  Specifically, the appellant refers to inconsistencies between the victim's recitation of

4

the circumstances of the offense and the version presented by Clint Jennings. Although we acknowledge the discrepancies between the State's proof and the appellant's proof at trial, the determination of the weight and credibility of the testimony of witnesses and reconciliation of conflicts in that testimony are matters entrusted exclusively to the trier of fact, and not this court. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Despite the conflicts within the testimony at trial, as the arbiters of the credibility of the witnesses, the jury chose to accredit the testimony of the State's witnesses and reject the claims of the appellant. This court will not re-evaluate the evidence or substitute its inferences for those drawn by the trier of fact from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A conviction may only be set aside when the reviewing court finds that the evidence is insufficient to support the finding of the trier of fact. Tenn. R. App. P. 13(e).

When there is a challenge to the verdict based upon the sufficiency of the evidence, this court must review the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e). A guilty verdict accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. Grace, 493 S.W.2d at 476. Moreover, the appellant bears the burden of proving that the evidence is insufficient to support the jury verdict in his case. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1992).

Robbery is defined as the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401 (1991). Again, the appellant argues that, although he was present during

5

the robbery, he did not actively participate in the offense. Accordingly, he argues that there is insufficient evidence to show that he possessed the requisite intent to engage in the robbery. This argument, however, ignores the provisions of Tenn. Code Ann. § 39-11-402 which permits criminal liability to be imposed based upon the conduct of another. A person is criminally responsible for the conduct of another if, "acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aid, or attempts to aid another person to commit the offense . . . ." Tenn. Code Ann. § 39-11-401; -402(2) (1991); see also State v. Carson, 950 S.W.2d 951, 953 (Tenn. 1997). Moreover, guilt may be predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995).

The proof in the present case established that the appellant sat in the front passenger seat of the cab and "slid over" to the driver's side when Jennings began striking the victim with a hammer. He remained silent during Jennings' attack on Hammond, and, after Hammond fled from the cab, the appellant was seen driving the stolen vehicle away. Moreover, since the attack was initiated while the vehicle was moving, the trier of fact could reasonably infer that the appellant purposefully sat in the front seat in order to gain control of the vehicle during the attack. Additionally, after having several opportunities to withdraw from the criminal venture, the appellant remained in joint possession of the stolen cab when it came to rest in the ditch. Finally, the appellant's flight from the scene, including his attempt to evade confrontation with law enforcement officers, is a relevant circumstance from which, when considered with the other facts and circumstances in evidence, a jury can properly draw an inference of guilt. See State v. Zagorski, 701 S.W.2d 808, 813 (Tenn. 1985); State v. Hill, 875 S.W.2d 278, 284 (Tenn. Crim. App. 1993), perm. to appeal denied, (Tenn. 1994); Rogers v. State, 455 S.W.2d 182, 187 (Tenn. Crim. App. 1970). These facts, both circumstantial and direct, support the jury's

findings that the appellant acted with the intent to assist in the robbery by aiding or attempting to aid Jennings in the commission of the offense. By aiding and assisting in the offense, the appellant became criminally responsible for the conduct committed by Jennings. Accordingly, we conclude, as a matter of law, that the evidence is sufficient to support a finding by the jury that the appellant is guilty of robbery. This issue is without merit.[2]

## II. Failure to Instruct Jury on Offense of Accessory After the Fact

In his final issue, the appellant contends that the trial court's denial of his request for a jury charge on the offense of accessory after the fact was error. Whether or not the facts of this case would have constituted the crime of being an accessory after the fact is a nonissue, because that felony was not charged in the indictment. The law is clear that a defendant cannot be convicted of an offense that is neither charged in the indictment nor is a lesser grade or lesser included offense of the offense charged. See State v.Trusty, 919 S.W.2d 305, 310-14 (Tenn. 1996); State v. Hodgkinson, 778 S.W.2d 54, 63 (Tenn. Crim. App. 1989); State v. Norris, 684 S.W.2d 650, 655 (Tenn. Crim. App. 1984); State v. Hoosier, 631 S.W.2d 474, 476 (Tenn. Crim. App. 1982). This issue is without merit.

---

[2]The appellant also argues that he cannot be found guilty of robbery via criminal responsibility because Jennings pled guilty to especially aggravated robbery. In other words, he contends that the jury could have only found him guilty of especially aggravated robbery via criminal responsibility because that is the offense committed by the principal actor. This argument is misplaced.

> In a prosecution in which a person's criminal responsibility is based upon the conduct of another, the person may be convicted on proof of commission of the offense and that the person was a party to or facilitated its commission, and it is no defense that:
> (2) The person for whose conduct the defendant is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or different type or class of offense, or is immune from prosecution. Tenn. Code Ann. § 39-11-407(2). (emphasis added).

### III. Conclusion

After a review of the issues presented, we affirm the judgment of the trial court.


PER CURIAM