IN THE COURT OF CRIMINAL APPEAL OF TENNESSEE
AT JACKSON
AUGUST 23, 2002 Session

## JERRY NEAL CARPENTER V. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Knox County**
**No. 47388   Richard R. Baumgartner, Judge**

_____

**No. E2001-01732-CCA-R3-PC**
_____        __November 20, 2002_____

The Petitioner Jerry Neal Carpenter appeals from the order of Knox County Circuit Court denying his petition for post-conviction relief.  The post-conviction court dismissed Carpenter's petition, finding that the only claim alleged, *i.e.*, the ineffectiveness of counsel, was without merit.  In this appeal as of right, Petitioner challenges the lower court's ruling. We affirm the judgment of the post-conviction court.  All members of the panel are sitting by designation.

**Tenn. R. App. P. 3 Appeal as of Right;  Judgment of the Circuit Court ( Affirmed )**

Lloyd Tatum, Special Judge, delivered the opinion of the court, in which, Special Judges David Farmer and Frank Crawford, joined.

Mark E. Stephens, District Public Defender, John Halstead, Assistant Public Defender; Knoxville, Tennessee, for the appellant, Jerry Neal Carpenter.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney general; Randall E. Nichols, District Attorney General, and Marsha L. K. Selecman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner, Jerry Neal Carpenter, was indicted by the Knox County Grand Jury on the offenses of first-degree premeditated murder, first-degree felony murder, and robbery.  Although he was ultimately acquitted of premeditated murder and robbery, Petitioner was convicted of felony murder committed in the perpetration of a robbery and, on December 17, 1987, was sentenced to a term of life imprisonment.  His conviction and sentence were affirmed on direct

1

appeal to this Court. *See* <u>State v. Carpenter</u>, 773 S.W.2d1 (Tenn. Crim. App. 1989), *perm. to appeal denied,* (Tenn, May8, 1989), *reh'g denied,* (Tenn. June 27, 1989).

The direct appeal opinion provides the following synopsis of the evidence at Petitioner's trial:

"Myrtle Chapman, the operator of Myrt's Package Store, was found dead at her place of business on Clinton Highway in Knox County on March 25, 1985, shortly after 7:00 P.M. She had been struck repeatedly with a sharp object. Blood spatters were found throughout the store. The Knox County Medical Examiner testified that there were approximately ten deep lacerations to the head and face of the victim. His opinion was that a hatchet could have been used to inflict the wounds.

A bank bag found next to the cash register was open and empty. Three adding machine tapes and a bank deposit slip were found on the counter near the bank bag or on the floor.

The victim's husband, J.D. Chapman, testified that his wife had discovered money missing from the bag on the morning of the offense as she prepared to make her bank deposit. He stated that on the day before, a Sunday, the only persons who had been behind the counter, where the money was generally kept, were his two nephews, John and Jack Head, and the defendant.

Shortly after he discovered the loss, Chapman asked the defendant if he had taken the money on the previous day. The defendant denied he had done so, volunteered to take a lie detector test, and offered not to return to the premises. The amount missing from the previous day was determined to be $270.00

At 5:45 P.M. on the day of the murder, the defendant was observed in the package store telling the victim that he had cut himself under the left eye. After he made a telephone call, however, he left.

Imogene Smith testified that she talked by telephone to the victim on the afternoon of March 25th. The victim advised her that she would have to hang up because "that little son-of -a-bitch is coming back in the store." When Smith asked if she was talking about "the guy who stole your money," the victim replied affirmatively. Smith related that the victim had told her during a phone conversation earlier in the day that she suspected that the defendant was the thief and informed him that she was going to have the money bag fingerprinted. The trial court admitted into evidence the victim's statements in the last telephone conversation as statements within the present sense impression exception to the hearsay rule.

Darrell Waddell, the defendant's first cousin, testified that he saw the defendant receive a cut under his left eye on the afternoon of March 25th. Between 5:30 and 6:00 P.M., the defendant went to the victim's place of business for a Band-aid and cold drinks. After Waddell and the defendant finished some chores at a nearby furniture store, the defendant announced that he was returning to Myrt's to get something else to drink.

2

Dean Herrell arrived at the furniture store just before the defendant returned at about 6:30 P.M. At that time, the defendant carried his beige jacket under his arm. Each of the three then took hits of LSD. Before the defendant left with Herrell, Waddell arranged to pick him up at an apartment. When Waddell arrived, he noticed that the defendant had dark spots on his jeans which appeared to be blood. The defendant changed clothes when they arrived at his residence. Waddell also heard the furnace door open and close when the defendant went downstairs.

Waddell and the defendant passed by Myrt's Package Store after they left the residence. When Waddell saw the police cars and asked what was going on, the defendant said, "I think I've hurt J.D. (Chapman). Me and J.D. got in a fight." When Waddell stopped for gas later, the defendant said he would pay and pulled out several bills, including 5's, 10's, and 20's. When asked where he had gotten the money, the defendant replied, "Darrell, I think I've killed Myrt." He then said, "She seen me getting into her money bag." The defendant told Waddell that Myrt hit him on the head with a stick. After they attended an auction that evening, the defendant asked Waddell not to "tell on me… If you don't tell nobody, nobody won't know."

Waddell then related that a handheld hatchet kept at a woodpile near the furniture store had disappeared between Sunday, March 24th, and Monday, March 25th. He testified that he had looked for the hatchet since then but had never found it.

Herrell said that he noticed a knot on the defendant's head when he arrived at the furniture store on the afternoon of March 25th. After Herrell gave the defendant a ride, the defendant paid for his gas. He saw the defendant throw the vest jacket he carried underneath his arm into a dumpster. Herrell said that he detected the brown splotches on the defendant's pants. After he threw the jacket into the trash, the defendant told Herrell he thought he had killed someone. Alter Herrell dropped the defendant off, he noticed a one and one-half foot long hatchet left on the floorboard of his car. It was stained by the same brown color on the defendant's pants. Herrell threw the hatchet into a lake but never told anyone about it until the day of the trial. Herrell admitted to a drug addiction and sought treatment several months after the incident.

Detective Mike Lett, after conducting interviews of certain witnesses, found the defendant's shirt and vest in the trash dumpster. After acquiring a search warrant for the defendant's residence, he searched the ashes of the defendant's furnace. He found several metal pieces which could have come from burned jeans.

A serologist who made an analysis of the shirt and vest found blood stains consistent with that of both the defendant and the victim. He found blood on the victim's glasses which was consistent with that of both the victim and the defendant.

A metallurgist testified that the metal pieces from the ashes were rivets and fastners similar to those used in the garment industry to make jeans.

Defense presented three witnesses. Charles Cox testified he saw a blue truck parked at Myrt's Package store on March 25th. The time was established at 6:00 to 6:15 P.M. by Bernice Nance.

The defendant's mother testified that she usually obtained the clothes she wore at yard sales or from donations. She said she commonly burned any clothes that she could not use in her basement furnace."

In this post conviction case, the Petitioner originally assigned several issues, but prior to the post conviction hearing in the trial Court, the Petitioner conceded that the only issue for consideration was whether the Petitioner was denied the effective assistance of counsel on direct appeal due to the failure of his attorneys to raise the issue of whether the trial court erred by failing to instruct the jury as to the offense of second degree murder. The record reveals that trial Counsel requested the trial Court to charge the jury as to second degree murder which was declined by the trial Court. Counsel for the Petitioner did not raise this as an issue on direct appeal. The Post Conviction Court found that under the law in effect at the time of the trial, there was no legal basis upon which to mandate a charge of second degree murder as a lesser included offense of felony murder and that therefore counsel was not deficient for failing to raise the issue on direct appeal from his conviction for felony murder.

At the post conviction hearing, the attorneys for the Defendant at trial and on appeal both testified. The record reveals that they are well qualified and experienced criminal lawyers, specifically they have extensive experience in homicide cases. Most of their testimony was their recollection of the evidence at trial. However, we granted the Petitioner's motion to take judicial notice of the trial record and we have reviewed the trial record which is comprised of approximately twelve (12) volumes. Defense attorneys testified that they presented six (6) issues to this court on direct appeal and four (4) of the issues were found to have merit, but that the errors committed at trial were harmless. Counsel testified that they did not want to clutter their appeal with frivolous issues and they did not think that a charge of second degree murder was appropriate because of the lack of proof of second degree murder. The Assistant District Attorney General that prosecuted this case stated that he considered asking for the death penalty, but did not seek the death penalty because of the defense counsel's success in getting a confession made by the Petitioner surpressed.

To sustain a petition for post conviction relief filed prior to 1995, a defendant must prove his or her factual allegations by a preponderance of the evidence at an evidentiary hearing. *See* Davis vs. State, 912 S.W. 2d 694, 697 (Tenn. 1995). Upon review, this court will not reweigh or reevaluate the evidence below; all questions concerning the creditability of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momen vs. State, 18 S.W. 3d 152, 156 (Tenn. 1999). The issue of ineffective assistance of counsel presents mixed questions of law and fact, we reviewed this issue *de novo*, with a presumption of correctness given only to the post-conviction courts finding of fact. Fields vs. State, 40 S.W. 3d 450, 458 (Tenn. 2001). Both the Sixth Amendment to the United States Constitution and Article I § 9 of the Tennessee Constitution guarantee the Defendant the right to representation by counsel. State vs. Burns, 6

4

S.W. 3d 453, 461 (Tenn. 1999). To determine whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter vs. Rose, 523 S.W. 2d 930, 936 (Tenn. 1975). When reviewing a claim that counsels failure to raise an issue on appeal amounted to a deficit performance or result in prejudice to the Defendant, a determination as to the substance of a claim is essential. *See* Kimmelman vs. Morrison, 477 U.S. 365, 375, 106 S. Ct. 2574, 2583, 91 L. ed. 2d 305 (1986) (To prevail on ineffectiveness of a claim involving counsels failure to raise legal issue on appeal, Defendant must show that issue has merit). Since the Petitioner claims that his counsel was ineffective by failing to raise the issue of a lesser included instruction on direct appeal, we must consider the merits of the issue to determine whether the issue would have warranted relief if brought on direct appeal, and therefore whether his counsel's failure to raise this issue resulted in prejudice to the Petitioner.

As previously stated, the trial court denied a request by the defense to charge the jury on second degree murder as a lesser included offense to first degree murder. Trial counsel did not present this as an issue on direct appeal. The Petitioner insist that this is reversible error as he was entitled to an instruction on second degree murder as a lesser included offense to first degree murder under T.C.A. § 40-2518 (now repealed,) and replaced by T.C.A. § 40-18-110(a). The statute places a duty on trial judges in criminal prosecutions of any felony wherein two or more grades are included in the indictment, to charge the jury as to all of the law of each included offense in the indictment.

In State vs. Atkins, 681 S.W. 2d 571 (Tenn. Crim. App. 1984), certiorari denied 105 S. Ct. 1395, 84 L. ed. 2d 784, it was held: If there is evidence reasonable minds could accept as to any such lesser offenses, the accused is entitled to appropriate instructions regarding the lesser offenses. *Johnson vs. State*, 531 S. W. 2d 558 (Tenn. 1975); T.C.A. § 40-18-110(a). However, the practice of charging lesser included offenses where there is no evidence to support them, is not favored. *State vs. Mellons*, 557 S. W. 2d 497 (Tenn. 1977); *Whitwell vs. State*, 520 S. W. 2d 338 (Tenn. 1975).

The above rule was applied in State vs. King, 718 S. W. 2d 241, 245 (Tenn. 1986), wherein a defendant was indicted for both premeditated murder and felony murder. The jury convicted of felony murder only. The trial judge did not charge the jury with respect to second degree murder, but charged only first degree premeditated murder and felony murder. Similarly, the above rule was applied in State vs. Vann, 976 S. W. 2d 93, 100-101 (Tenn. 1998). The defendant was charged with both first degree premeditated murder and felony murder, but the trial judge gave no instructions on the lesser offense of second degree murder. The defendant was convicted of felony murder only. The Supreme Court held that the trial court did not err in failing to change second degree murder as there was no evidence of second degree murder.

The Defendant did not testify in this case and offered no evidence contradicting the state's evidence, including the testimony of the witnesses Harrell and Waddell.

The Petitioner argues that his conviction for the killing committed in the perpetration of robbery and his acquittal of the count charging him with robbery is inconsistent. However, the

5

verdict on a multiple-count indictment does not have to be consistent as to each count. State vs. Allen, 692 S. W. 2d 651 (Tenn. Crim. App. 1985). Moreover, the verdict acquitting the Petitioner of robbery is not in contemplation of law inconsistent with the finding of guilt as to the felony murder count. The Constitutional provisions prohibiting double jeopardy would prohibit a conviction of both robbery and murder in the perpetration of robbery. State vs. Norris, 684 S. W. 2d 650 (Tenn. Crim. App. 1984).

The Petitioner further points out that there was considerable evidence at trial impeaching the testimony of the witnesses Herrell and Waddell. We must observe however, that there was abundant uncontradicted evidence supporting the testimony of these witnesses and none contradicting it. In any event, the creditability of witnesses is determined by the jury and not appellate courts.

The Petitioner also argues that since the jury was out seven (7) hours in deliberation that it indicates difficulty in deciding this case. We will not speculate on what the jury was doing during seven (7) hours in deliberation considering this evidence consisting of approximately twelve (12) volumes. The length of time that a jury deliberates has no bearing on the strength or correctness of their conclusions or the validity of their verdict. Anglin vs. State, 553 S. W. 2d 616 (Tenn. Crim. App. 1977).

The uncontradicted evidence supports the finding of the jury that the defendant was guilty of felony murder. There was no evidence at trial that the Petitioner was guilty only of second degree murder or other lesser offense. It results that we find that the trial judge did not commit error in refusing to instruct the jury on second degree murder and that the Petitioner's counsel did not commit error in failing to assign this as an issue on appeal to this court.

The judgment of the court in denying the Petitioner post-conviction relief is affirmed.

_____
SENIOR JUDGE F. LLOYD TATUM

6