IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 4, 2002 Session

## STATE OF TENNESSEE v. HOWARD JEFFERSON ATKINS

**Direct Appeal from the Circuit Court for Tipton County**
**No. 3956    Joseph H. Walker, Judge**

_____

**No. W2001-02427-CCA-R3-CD - Filed May 16, 2003**

_____

Following a transfer of this case from juvenile court to circuit court for trial, a Tipton County jury convicted the defendant, sixteen-year old Howard Jefferson Atkins, of first-degree premeditated murder.  The trial court subsequently ordered the defendant to serve a life sentence with the possibility of parole.  The defendant now brings this direct appeal of his conviction, challenging: (1) whether the trial court properly denied his motion to suppress his pre-trial statements to police; (2) whether the state's peremptory strike of four female jurors violated Batson v. Kentucky, 476 U.S.79 (1986); (3) whether the state improperly extracted a promise from the jury during voir dire; (4) whether the trial court erred by allowing the victim's son to offer certain testimony regarding the victim's peaceable character; (5) whether the trial court erred by failing to give a curative instruction following the victim's son's testimony; (6) whether the trial court erred by allowing testimony describing the graphic nature of photos that the court ruled were inadmissible because of their overly prejudicial nature; (7) whether the trial court erred by allowing the medical examiner to testify that she had retained certain bones from the victim's body for forensic pathology; and (8) whether the evidence is sufficient to support the defendant's conviction for first degree murder.  After reviewing the record and applicable law, we find that none of the defendant's allegations merit relief and accordingly affirm the judgment of the lower court.

**Tenn. R. App. P. 3; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

C. Michael Robbins and Leslie Ballin, Memphis, Tennessee, for the appellant, Howard Jefferson Atkins

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth Rice, District Attorney General; and James W. Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background

On April 16, 2000, the defendant, Howard Jefferson Atkins, returned home to his mother and step-father's house after a weekend with his father. His step-father, the victim, was outside his home when the defendant returned, and the sounds of his mother crying were audible from outside the home. The victim greeted the defendant by telling him to "[g]o in there and take care of your mother like you always do." The defendant testified that the victim had been abusing his mother throughout their relationship, which spanned four years. The defendant also testified that the victim had been emotionally abusive of him, as well, and had hit him on several occasions. After this exchange with the victim, the defendant went inside and comforted his mother, who told the defendant that she planned on divorcing the victim and wanted to leave the house soon. She later took a pain pill and went to sleep in the defendant's room.

Some time that evening, the defendant went into the victim's bedroom, where the victim was asleep. The defendant claimed that he intended to speak with the victim and ask him to leave the house for a few days so that he and his mother could leave the house peaceably. The defendant initially brought a baseball bat and chair leg with him for protection from the defendant during this conversation, but entered the victim's bedroom with only the baseball bat. The defendant testified that after several minutes of pleading, the victim refused his request and threatened to kill him. According to the defendant, the victim then reached, or so the defendant believed, for a gun which was kept in the night stand drawer. In reaction to this threat, the defendant swung at the victim with his baseball bat, hitting him between nine to twelve times in the head, killing the defendant and smashing his skull. The defendant then began to clean up the victim's blood and moved his body and bed mattress outside so that his mother would not awake to see the blood. The defendant then called his father and confessed his crime, and his father advised him to call 911. The defendant did so, and the police arrived shortly thereafter. Once the defendant opened the door, the police secured him on the front porch and asked him if there were any firearms in the house. During the time the defendant was on the front porch with a police officer, he made statements about the events that transpired that night, specifically that he hit the victim because he feared for his life and feared that the victim was reaching for a gun to shoot him.

At trial, the state introduced the testimony of police officers who had searched the crime scene and who testified that they did not locate a handgun in either of the night stands in the victim's bedroom or anywhere in the house. The state also introduced character evidence of the victim's peaceable nature, specifically testimony from his children, former wives, a cousin, a friend, and an employee. The defense introduced testimony from the defendant's father, former teachers, youth ministers, and parents of his friends, all of whom testified regarding the defendant's peaceable character. Additionally, the defendant testified on his own behalf.

At the close of proof, the jury found the defendant guilty of premeditated first degree murder, and the trial court accordingly sentenced the defendant to serve life with the possibility of parole. The defendant now brings this direct appeal of his conviction challenging, as outlined above, (1) whether the trial court properly denied his motion to suppress; (2) whether the state's peremptory strike of four female jurors violated Batson; (3) whether the state improperly extracted a promise

from the jury during voir dire; (4) whether the trial court erred by allowing the victim's son to offer certain testimony regarding the victim's peaceable character; (5) whether the trial court erred by failing to give a curative instruction following the victim's son's testimony; (6) whether the trial court erred by allowing testimony describing the graphic nature of photos that the court ruled were inadmissible because of their overly prejudicial nature; (7) whether the trial court erred by allowing the medical examiner to testify that she had retained certain bones from the victim's body for forensic pathology; and (8) whether the evidence is sufficient to support the defendant's conviction for first degree murder. We will address in turn each basis for appeal.

## Suppression of Defendant's Statement

The defendant complains that the trial court erred by denying his motion to suppress his pre-trial statements made to the police during custodial interrogation. The defendant claims that he did not fully understand the rights read to him pursuant to Miranda; he believed that he was entitled to have an attorney present at trial but not during custodial interrogation. The defendant claims that his youth, combined with his extreme nervousness at the time of his interview, his limited understanding of his Miranda warnings based on knowledge gained through television programs, and assurances by police that if he were to talk with police, everything would be "okay," demonstrates that the defendant did not make a knowing and voluntary waiver of his Miranda rights.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999).

As aforementioned, the defendant argues that the trial court erroneously denied his motion to suppress the allegedly involuntary incriminating statement that he made to the police. The Fifth Amendment to the United States Constitution provides in part that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, Article I, Section 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused ". . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. However, an accused may waive this right against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). In Miranda, the United States Supreme Court held that a suspect must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. Miranda, 384 U.S. at 479. The Supreme Court held that a suspect may knowingly and intelligently waive the right against self-incrimination only after being apprised of these rights. Id.

Accordingly, for a waiver of the right against self-incrimination to be held constitutional, the accused must make an intelligent, knowing, and voluntary waiver of the rights afforded by Miranda. Id. at 444. A court may conclude that a defendant voluntarily waived his rights if, under the totality of the circumstances, the court determines that the waiver was uncoerced and that the defendant understood the consequences of waiver. State v. Stephenson, 878 S.W.2d 530, 545 (Tenn. 1994).

> In State v. Callahan, 979 S.W.2d 577 (Tenn. 1998), the Tennessee Supreme Court held: that juvenile waivers shall be analyzed under a totality-of-the-circumstances test that requires consideration of the following factors:
> (1) . . . all circumstances surrounding the interrogation including the juvenile's age, experience, education, and intelligence;
> (2) the juvenile's capacity to understand the Miranda warnings and the consequences of the waiver;
> (3) the juvenile's familiarity with Miranda warnings or the ability to read and write in the language used to give the warnings;
> (4) any intoxication;
> (5) any mental disease, disorder, or retardation; and
> (6) the presence of a parent, guardian, or interested adult.

Id. at 583. The supreme court further provided that "[w]hile courts shall exercise special care in scrutinizing purported waivers by juvenile suspects, no single factor such as mental condition or education should by itself render a confession unconstitutional absent coercive police activity." Id.

In its order denying the defendant's motion to suppress, the trial court found that the defendant confessed to the instant crime voluntarily and after being fully advised of his constitutional rights. Specifically, the trial court found that the circumstances surrounding the defendant's decision to waive his rights and make a statement to the police indicate that the defendant was not intimidated, coerced, or deceived into relinquishing those rights. The defendant was given the Miranda warnings, read them, and signed the waiver. The trial court characterized his demeanor as "calm and cooperative" and noted that the defendant's father was present with him during the interrogation. The trial court also noted that while the defendant was sixteen-years-old at the time of the interrogation, he is of above-average intelligence and "indicated no reason why he could not comprehend what rights he was relinquishing." The court further noted that the defendant was questioned within a few hours of the incident and that the interrogating officer noted that the defendant did not appear sleepy or in less than full command of his faculties. After reviewing the record, we find that the evidence does not preponderate against these findings of fact and accordingly accredit them. Applying them to the standard for determining the voluntariness of a defendant's statement outlined above, we find that the trial court properly denied the defendant's motion to suppress his incriminating statements made to police.

**Propriety of Peremptory Strike of Female Prospective Jurors**

The defendant argues that the trial court allowed the state to exercise four impermissible peremptory challenges of female prospective jurors because all four challenges were based on the gender of the jurors. In Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the United States Supreme Court held that "the equal protection clause forbids the prosecutor to challenge jurors solely on account of their race." Id. at 89. In J.E.B. v. Alabama, ex rel. T.B., 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994), the Court extended the Batson prohibition to peremptory strikes based on gender, as well. Id. at 130-31.

More recently in State v. Spratt, 31 S.W.3d 587 (Tenn. Crim. App. 2000), this Court addressed the policy reasons for prohibiting race- or gender-based peremptory strikes and the procedure for invoking the protection created by Batson and J.E.B.

> "The peremptory challenge is one of the oldest established rights of the criminal defendant." United States v. Annigoni, 96 F.3d 1132, 1136 (9th Cir.1996). For more than one hundred years, the United States Supreme Court has recognized that peremptory challenges are "an essential part of the trial." Lewis v. United States, 146 U.S. 370, 376, 13 S. Ct. 136, 138, 36 L. Ed. 1011 (1892). The Supreme Court has also stated that the right of peremptory challenge is "one of the most important of the rights secured to the accused." Pointer v. United States, 151 U.S. 396, 408, 14 S. Ct. 410, 414, 38 L. Ed. 208 (1894). The importance of the right to make peremptory challenges is demonstrated by the extraordinary remedy courts have traditionally afforded to an accused who was deprived of the right: reversal of conviction, without a showing of prejudice. Lewis, 146 U.S. at 376, 13 S. Ct. at 138. "Peremptory challenges, along with challenges for 'cause,' are the principal tools that enable litigants to remove unfavorable jurors during the jury selection process." Annigoni, 96 F.3d at 1137. "The central function of the right of peremptory challenge is to enable a litigant to remove a certain number of potential jurors who are not challengeable for cause, but in whom the litigant perceives bias or hostility." Id. "The function of the [peremptory] challenge is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise." Swain v. Alabama, 380 U.S. 202, 219, 85 S. Ct. 824, 835, 13 L. Ed. 2d 759 (1965), overruled on other grounds, Batson, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69.

Spratt, 31 S.W.3d 597-98.

> To invoke the protections of Batson and its progeny, the [proponent of a Batson challenge] must establish a prima facie case that a juror is being challenged on the basis of race. Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770-71, 131 L. Ed. 2d 834 (1995); Batson, 476 U.S. at 93-94, 106 S. Ct. at 1721. Once the [proponent of the Batson challenge] has presented a prima facie case, the trial court

shall require the [opponent] to give a race-neutral reason for the challenge. <u>Purkett</u>, 514 U.S. at 767, 115 S. Ct. at 1770-71; <u>McCollum</u>, 505 U.S. at 59, 112 S. Ct. at 2359. "The race or gender neutral explanation need not be persuasive, or even plausible . . . . Unless a discriminatory intent is inherent in the [opponent's] explanation, the reason offered will be deemed race neutral." <u>Purkett</u>, 514 U.S. at 767, 115 S. Ct. at 1770-71. If a race or gender neutral explanation is given, the court must then determine, given all the circumstances, whether the proponent has established purposeful discrimination. <u>Purkett</u>, 514 U.S. at 767, 115 S. Ct. at 1770-71; <u>Batson</u>, 476 U.S. at 96-98, 106 S. Ct. at 1723-24.

"The trial judge must carefully articulate specific reasons for each finding on the record, i.e., whether a prima facie case has been established; whether a neutral explanation has been given; and whether the totality of the circumstances support a finding of purposeful discrimination." <u>Woodson v. Porter Brown Limestone Co., Inc.</u>, 916 S.W.2d 896, 906 (Tenn. 1996). "The trial court's factual findings are imperative in this context." <u>Id.</u> "On appeal, the trial court's findings are to be accorded great deference and not set aside unless clearly erroneous." <u>Id.</u> (citation omitted). "Thus, specificity in the findings is crucial." <u>Id.</u>

<u>Spratt</u>, 31 S.W.3d at 595-96.

In the instant case, after the prosecutor exercised peremptory challenges to excuse four female potential jurors from the venire, defense counsel objected. After the defendant argued to the court that the prosecutor had dismissed these four jurors on the basis of their gender, the prosecutor responded by explaining his rationale for having dismissed the four potential jurors. Specifically, the prosecutor recounted that he struck two of the potential jurors because they had been "raised by single parents or in dysfunctional sort[s] of households." The prosecutor explained that the third potential juror at issue knew one of the defense witnesses and that her son was a friend of the defendant. The fourth potential juror, according to the prosecutor, did not have the intellectual ability to follow some important arguments that would be raised by both the state and the defense. At the conclusion of the prosecutor's explanation, the trial court responded that it accepted the prosecutor's reasons and resumed empaneling the jury.

The defendant now complains that (1) the prosecutor's reasons for dismissing the four female potential jurors were insufficient to establish a race-neutral motivation and (2) the trial court did not state its findings supporting its decision to accept the prosecutor's reasons for dismissing the potential jurors with sufficient specificity, as required by <u>Spratt</u>. With regard to the defendant's first complaint, that the prosecutor's reasons for dismissing the four potential jurors were unpersuasive, we again note that "[t]he race or gender neutral explanation need not be persuasive, or even plausible . . . . Unless a discriminatory intent is inherent in the [proponent's] explanation, the reason offered will be deemed race neutral." <u>Purkett</u>, 514 U.S. at 767. We find that a discriminatory intent is not inherent in the prosecutor's reasons for dismissing the four jurors. Rather, the prosecutor explained his motivation for dismissing each potential juror, and we find that the prosecutor's reasons do not inherently evidence a discriminatory intent.

-6-

Turning next to the defendant's argument that the trial court's ruling lacked the specificity required by <u>Woodson v. Porter Brown Limestone Co., Inc.</u>, we agree that the trial court's finding overruling the defendant's <u>Batson</u> objection was not made with the requisite specificity. As discussed above, the bench conference in which the defendant's objection was raised, discussed, and overruled was fairly short. The defendant objected, arguing that the prosecutor's peremptory strikes of four female potential jurors established a prima facie case of discrimination. The prosecutor then responded by outlining his gender-neutral reasons for excusing the four potential jurors, and the trial court responded by stating that it accepted the prosecutor's reasons and concluded the bench conference. However, while we agree that specificity in the trial court's findings would have been appropriate and greatly aided our review of this issue on appeal, we nevertheless find that the trial court acted reasonably by deciding to accept the prosecutor's race-neutral reasons for dismissing the potential jurors, therefore implicitly finding that the state did not act with purposeful discrimination. Thus, this issue lacks merit.

### Propriety of Promise Extracted by the State from the Venire

The defendant argues that the state improperly extracted a promise from potential jurors that if they were selected to serve as jurors during the defendant's trial, they would not consider the potential culpability of any other individuals besides the defendant. Recognizing that he failed to object to this statement when made, the defendant argues that this Court should find that the state's statement constitutes plain error because it prevented the defendant from introducing a defense that another was culpable for the defendant's crime, specifically that the defendant acted under the influence of his mother. The state counters by arguing first that the defendant has waived this issue on appeal by failing to make a contemporaneous objection, secondly arguing that the statement does not constitute plain error, and thirdly arguing that the statement did not deny the defendant his right to present a defense.

During voir dire, the prosecutor made the following statements to the venire:

> Finally, and this happens on occasion, and because the State really does not know how the case will unfold from the defendant's point of view, we know how the case is going to unfold from the State's point of view, but there is a possibility that, in effect, someone else may be put on trial.
>
> Do we understand that the trial, if you are chosen as a juror today, will be based strictly on the guilt or not guilty [sic] of that young man seated there with the sweater (indicating), Howard Jefferson Atkins, Jeff Atkins?
>
> That is, you may hear and you may believe, I don't know, but you may hear and may believe that someone in addition to Mr. Atkins is either criminally responsible or morally responsible or should have done a better thing. And I'll be honest with you, it may be the mother, Karen Atkins. She may be put informally on trial for bad parenting or something.
>
> Would you each promise to listen carefully to the proof as it develops against Jeff Atkins? And we'll have enough other things to consider. We'll have enough

things to prove. Would you promise to leave anything on anybody else, their guilt or innocense or culpability or responsibility, leave that to some other time and some other place, and judge this case on the guilt or innocence, which gets down to whether the State has carried its burden of proof against that young man there in the sweater (indicating)? Would you do that?

The record indicates that the prospective jurors gave affirmative responses at the end of this inquiry.

We first note that, as the defendant correctly stipulates, he has waived this argument on appeal by failing to make a contemporaneous objection to the prosecutor's remarks at trial. See Tenn. R. App. P. 36(a). However, this Court may still consider this issue if the defendant establishes plain error. In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. See State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994); see also Tenn. R. Crim. P. 52(b).

The defendant argues that the prosecutor's remarks precluded him from presenting the defense theory that he acted as his mother's agent, as opposed to acting under his own will when he killed the victim, and therefore that he is less culpable for the crime that he committed. It is hard to discern the prosecutor's intent when making the statements at issue. The defendant claims that the prosecutor was attempting to extract a promise from the venire that they refuse to consider the potential culpability of any other individual other than defendant for this crime. The state counters that the prosecutor was not trying to extract an improper promise, but rather to explain that it is not a jury's job to find another guilty or innocent of the indicted charge, but to instead determine if the state had met its burden of proving the guilt of the accused. After reviewing the prosecutor's statement to the venire, we note that regardless of his intentions, the prosecutor's remarks were misleading. The prosecutor asked the venire to preclude from its consideration the potential "guilt or innocense or culpability or responsibility" of any other person other than the defendant, a subject well within the purview of jury consideration. See State v. Kilburn, 782 S.W.2d 199, 204 (Tenn. Crim. App. 1989) ("Where, as in this case, a defendant attempts to raise a third party defense, he is allowed to present proof tending to show that another had the motive and opportunity to have committed the offense. Where the proof is consistent with this hypothesis it is to be considered by the jury.")

However, while we agree with the defendant's contention that the prosecutor extracted an improper promise from the venire, we do not agree that this error adversely affected a substantial right of the defendant. The prosecutor's remarks to the venire did not preclude the defendant from introducing a defense theory that another was culpable for his crime. Rather, a defendant may attempt to introduce evidence in support of a defense theory, and the trial court, not the prosecutor, acts as the gate-keeper regarding the admissibility of that evidence. See State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997). From our review of the record, it does not appear that the defendant attempted to introduce evidence to support a defense theory that the defendant's mother or someone besides the defendant was culpable for his crime. The defendant's mother did not testify at the defendant's trial. This appears to have been a tactical decision on the part of defense counsel,

designed to prevent the prosecution from impeaching the defendant's mother with evidence suggesting that she planted a handgun in one of her night stand drawers after the murder in an effort to exonerate her son. Accordingly, because the defendant did not attempt to introduce such a defense theory at trial and because the prosecutor's comments, while improper, did not prevent him from doing so, we find that this issue does not constitute plain error and therefore cannot form a basis for relief.


## Admissibility of Testimony Regarding the Victim's Character for Peaceableness

The defendant argues that the trial court improperly allowed the state to introduce evidence of the victim's character for peaceableness. At the time that the state offered this proof, the defense had not yet introduced evidence regarding the victim's character. The defendant argues that this testimony regarding the victim's character was inappropriately introduced before the victim's character had been put at issue by the defense. The defendant objects to this testimony not solely because it was introduced at an improper time, but rather mainly because the testimony is irrelevant and immaterial in light of how remote the incidents recounted in the testimony were to the period of time at issue in this case.

Rebuttal testimony is "that which tends to explain or controvert evidence produced by an adverse party." Cozzolino v. State, 584 S.W.2d 765, 768 (Tenn. 1979). Furthermore, rebuttal testimony includes "[a]ny competent evidence which explains or is a direct reply to, or a contradiction of, material evidence" introduced by an adverse party. Nease v. State, 592 S.W.2d 327, 331 (Tenn. Crim. App. 1979); see also State v. Smith, 735 S.W.2d 831, 835 (Tenn. Crim. App. 1987). "Like any other evidence, rebuttal evidence must be relevant and material to the facts at issue in the case." State v. Lunati, 665 S.W.2d 739, 747 (Tenn. Crim. App. 1983). However, rebuttal evidence should be introduced after the adverse party introduces the evidence to be rebutted, as "[o]ne cannot rebut a proposition that has not been advanced." Cozzolino, 584 S.W.2d at 768. Nevertheless, the premature introduction of rebuttal evidence may be made harmless by the subsequent introduction of evidence that could properly be rebutted by the prematurely offered rebuttal proof. Id. The admission or rejection of rebuttal evidence is a matter within the discretion of the trial court, and a trial court's decision regarding the admissibility of rebuttal evidence will not be overturned absent a clear abuse of discretion. State v. Scott, 735 S.W.2d 825, 828 (Tenn. Crim. App. 1987). In the instant case, when the state's first witness, Raymond Conway, the victim's son by his first marriage, was testifying, the prosecutor asked Mr. Conway questions regarding the victim's nature, specifically seeking information about his character for peaceableness and how he had disciplined the witness and his siblings, half-siblings, and step-siblings when this witness lived with the victim. The trial court allowed the state to offer this testimony over the defendant's objection after learning that the defense planned to introduce evidence regarding the victim's character for violence when presenting its case-in-chief. We agree with the defendant that the trial court erred by allowing the state to introduce this evidence at this stage of the trial. The proper procedure would have been for the court to order the state to reserve the presentation of its rebuttal

evidence until after the defense presented the issue that the testimony was offered to rebut.[1] However, per Cozzolino, we find that this error was made harmless by the defendant's introduction of evidence concerning the victim's violent actions later in the trial. See Cozzolino, 584 S.W.2d at 768.

We next turn to the defendant's contention that the trial court should not have admitted the witness's rebuttal testimony because it was both immaterial and irrelevant. The defendant argues that the trial court should have sustained his objection to the proffered testimony because the witness was testifying about events twenty-six years prior to the event at issue, the victim's death. As noted above, the witness, who is the victim's son by his first marriage, testified about his relationship with the victim and the victim's treatment and discipline of him and other children while the witness lived with the victim.

Evidence must be relevant and probative to an issue at trial in order to be admissible. State v. McCary, 922 S.W.2d 511, 515 (Tenn. 1996); see also Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence may be excluded at trial if the probative value of that evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Tenn. R. Evid. 403. The determination of relevancy is left to the discretion of the trial court, and this Court will not overturn a trial court's determination in this regard in the absence of an abuse of discretion. State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

The defendant argues that the testimony at issue is irrelevant because it concerns a period of time far removed from the victim's death. However, we find that the testimony was relevant because it addressed the peaceable nature of the victim and the manner in which the witness observed the victim treat his former spouses and parent both his children and his step-children. This subject was put at issue by the defense, who argued that the defendant killed the victim in self-defense because the victim's actions towards the defendant and the defendant's mother had been menacing and therefore put the defendant in fear of his life. The trial court did not abuse its discretion in finding this evidence relevant.

Moreover, during cross-examination, defense counsel asked the witness several questions whose answers informed the jury that the witness was testifying about a period of time approximately twenty-six years ago, that the witness had no contact with the victim seven months prior to his death and had only limited contact with both the defendant and the defendant's mother while they lived with the victim. Therefore, we find that even if admission of this evidence had been erroneous the thorough cross-examination allowed for the jury itself to determine the remoteness and therefore the weight to be ascribed to it. Therefore any error would be at most harmless.

---

[1] Our ruling is limited to holding that the trial court erred in admitting the evidence before the defense put on proof of the victim's violent character. Had the state waited until after the defense proof of the victim's character, the state's proof of peaceable character traits would have been admissible in rebuttal. See, Tenn. R. Evid. 404(a)(2).

-10-

## Necessity of a Curative Instruction after the Testimony of Ray Conway, Jr.

In a related issue, the defendant argues that the trial court erred by failing to give the jury a curative instruction after it sustained his objection to improper testimony that the prosecutor elicited from Ray Conway, Jr. The testimony at issue concerns Mr. Conway's comments regarding how much he loved his father and that his father did not deserve to die in the manner in which he died. The defendant failed to request a curative instruction after the court sustained his objection to this testimony and has therefore waived the issue on appeal. See Tenn. R. App. P. 36(a). However, he argues that we should find that the trial court's failure to give a curative instruction to the jury constitutes plain error.

As discussed supra, in order to establish plain error, this Court must find five factors present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. See State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994); see also Tenn. R. Crim. P. 52(b).

The defendant complains that the trial court erroneously failed to give a curative instruction to the jury after the following colloquy took place on the record:

| [Prosecutor]: | Is there anything else you want to share with the jury? |
| [Mr. Conway]: | Yeah. |
| [Defense Counsel]: | Object to the form of the question. |
| [Mr. Conway]: | I would just like to say that I loved my father very much – |
| [The Court]: | Excuse me just a second. The objection will be sustained. If you would like to ask a specific question, you may. |
| [Prosecutor]: | Did you ever see or observe your father do anything to merit being beaten to death with an aluminum baseball bat? |
| [Defense Counsel]: | I object. |
| [Mr. Conway]: | He was never justified to die like this. I lived with him for over 42 years – |
| [The Court]: | The objection will be sustained. |

The defendant argues that the prosecutor's insistence on eliciting irrelevant and prejudicial testimony after the trial court sustained his objection and the fact that the testimony was designed to appeal to the jury's emotions and passions merited a curative instruction by the trial court. While we agree with the trial court that the prosecutor's questions were improper, we do not find that the error was so egregious as to make a curative instruction mandatory. The crux of this witness's testimony was that the witness and the victim had a good relationship; the victim was never abusive of the witness, nor did the witness observe the victim abusing others. Therefore, we cannot find that the witness's statements that he loved his father and that he believed his father did not deserve to die in the manner in which he did were so different from his admissible testimony as to be so inflammatory that a curative instruction was absolutely necessary. Accordingly, we find that the

-11-

defendant has not demonstrated that this Court should consider this issue in order to do substantial justice. Thus, we again find no plain error and hold that this issue has been waived.

## Propriety of Agent Roger Turner's Testimony

The defendant argues that the trial court improperly allowed Agent Roger Turner of the Tennessee Bureau of Investigation to describe, in his testimony, the graphic nature of several photographs of the deceased victim and crime scene although the court had earlier ruled these photographs inadmissible. During Agent Turner's testimony, defense counsel requested a bench conference to review whether the trial court would allow the admission of certain graphic photographs of the victim. Pre-trial, defense counsel had requested that certain photographs be suppressed due to their highly prejudicial and inflammatory nature. The trial court granted defense counsel's motion and suppressed those photographs. After the trial court made its ruling, the prosecutor asked the court for permission to allow him to ask various witnesses to describe the scenes depicted in these photographs without allowing the jury to view the photographs. Defense counsel stated that he would leave this issue to the discretion of the trial court, and the trial court requested that an objection be made before the prosecutor elicited the descriptions from his witnesses so that the court could rule on this issue at that time. However, defense counsel did not object when the prosecutor asked Agent Turner to describe the scenes in the suppressed photographs.

Because defense counsel never objected to Agent Turner's testimony in which he described these photographs, the defendant has waived this issue on appeal. See Tenn. R. App. P. 36(a). However, the defendant argues again that this court should consider this issue by finding that the trial court committed plain error by allowing Agent Turner to describe the scenes depicted in the suppressed photographs.

In an analogous case, State v. Eugene A. Turner, No. W1999-01866-CCA-R3-CD, 2000 WL 1473857 (Tenn. Crim. App. at Jackson, Oct. 2, 2001), this Court addressed the propriety of witness descriptions of graphic photographs that were not introduced into evidence. Specifically, the Court addressed the defendant's challenge to the trial court's decision to allow a TBI Agent and the state's forensic pathologist to describe crime scene photographs of the victims. Id. at *5. The defendant argued that the descriptions of the crime scene photographs "were irrelevant and just as prejudicial as the photographs" themselves. Id. Furthermore, the defendant argued that the descriptive testimony was cumulative because the forensic pathologist testified about the nature and extent of the victims' injuries, making "the descriptions of the blood splatters and gruesome details of the wounds" unnecessary. Id. This court concluded that the descriptions of the photographs should be analyzed under the same standard used for reviewing a trial court's decision to admit or suppress photographs, leaving the admissibility of the photograph descriptions to the sound discretion of the trial court. Id. The court's ruling on this issue will only be overturned on appeal upon the showing of an abuse of discretion. Id. However, "the testimony must be relevant to an issue at trial with its probative value outweighing any prejudicial effect that it may have upon the trier of fact." Id. After determining the appropriate standard of review, the court then found that the descriptions of the photographs were indeed relevant and therefore properly admitted because they "corroborate[d] the medical testimony and [gave] the jury a proper description of the crime scene." Id. at *6.

We find that the analysis employed by the Turner Court is equally applicable to the case at bar. Similarly to Turner, in the instant case the medical examiner testified about the nature and extent of the victim's injuries. We find that although the medical examiner described the victim's injuries, Agent Turner's descriptions of the injuries depicted in pictures of the victim's body were not duplicative of the medical examiner's testimony, but rather corroborated the medical examiner's testimony and gave the jury a description of the crime scene. Without viewing the graphic photographs, the jury was given a description of the crime scene that the photographs depict. We find that the trial court's allowing Agent Turner to describe the crime scene was substantially less prejudicial to the defendant than if the jury had been allowed to view the photographs in question. Accordingly, we find that the defendant has not demonstrated that this Court should find that the trial court committed plain error by allowing the admission of this descriptive testimony in order to effectuate substantial justice. See State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994); see also Tenn. R. Crim. P. 52(b).

## Propriety of Medical Examiner's Testimony

The defendant argues that the trial court erred by overruling his objection and allowing the medical examiner to testify that pursuant to the autopsy of the victim's body, the medical examiner's office retained the victim's skull, the wrist bone, and some finger bones for forensic pathology. The defendant submits that this statement was irrelevant to any issue before the jury and unduly prejudiced him by conveying to the jury that the victim's entire remains were not available for his burial, thereby inflaming the passions of the jury.

When evaluating a trial court's ruling on a Tennessee Rule of Evidence 403 motion to exclude evidence, the initial inquiry is whether the evidence offered was relevant to the case under Tennessee Rule of Evidence 401.

> The determination of whether evidence is relevant, or, if relevant, should be excluded for one of the reasons set forth in Rule 403, addresses itself to the sound discretion of the trial court. State v. Hill, 885 S.W.2d 357, 361 (Tenn. Crim. App. 1994). In deciding these issues, the trial court must consider, among other things, the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial.

State v. Dulsworth, 781 S.W.2d 277, 287 (Tenn. Crim. App. 1989). A trial court's determination regarding the relevancy of evidence will be reversed only upon a showing of abuse of discretion. State v. DuBose, 953 S.W.2d 649, 654 (Tenn. 1997). Once a trial court determines that the evidence is relevant under Rule 401, the court should not exclude the evidence unless "its probative value is substantially outweighed by the danger of unfair prejudice." Tenn. R. Evid. 403. Our supreme court has stated that unfair prejudice is "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." DuBose, 953 S.W.2d at 654 (citing State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978)); see also State v. McCary, 922 S.W.2d 511, 515 (Tenn. 1996).

In State v. Banks, the supreme court recognized the "policy of liberality in the admission of evidence in both civil and criminal cases." Banks, 564 S.W.2d at 949. When implementing the supreme court's policy, the trial court must weigh the probative value of the evidence against its potential prejudicial effect. Furthermore, this Court cannot substitute its judgment for that of the trial court or declare error absent a finding that the trial court abused its discretion. State v. Robinson, 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995) (citing State v. Melson, 638 S.W.2d 342 (Tenn. 1982)).

In the case at bar, the prosecutor initially requested that the trial court allow him to introduce the preserved victim's skull, which the medical examiner had brought with her to trial. After hearing argument from both the prosecutor and defense counsel, the trial court denied the prosecutor's request, finding that the probative value of showing the jury the victim's skull would have been outweighed by its prejudicial effect. After the trial court made this ruling, the prosecutor then requested that he be allowed to question the medical examiner about the victim's finger bones, wrist bone, and skull, which the medical examiner's office had retained after the victim's burial in order to study them more thoroughly. The prosecutor argued that the information was relevant to the issue of the thoroughness of the medical examiner's autopsy and agreed that if allowed to ask these questions, he would not ask the medical examiner to show the jury these bones or indicate whether she had brought the bones with her to trial. The trial court subsequently granted the prosecutor's request.

We find that the trial court properly allowed the medical examiner's testimony on this issue because the testimony, in context, demonstrated that the medical examiner's findings were not rushed, but rather the result of an extended period of study. Specifically, the medical examiner agreed with the prosecutor's assertion that keeping these bones after the remainder of the victim's body was released for burial allowed her perform the autopsy over an extended period of time. She further elaborated that the pathological analysis and examination of the deceased's tissues sometimes takes weeks to perform and evaluate the results. Additionally, the retention of these bones allowed her to carefully examine the fractures in these bones and determine the sequence and severity of the blows that caused those fractures. Accordingly, we respectfully disagree with the defendant's contention that this testimony is irrelevant. Furthermore, we find that this testimony, which did not include an introduction of the victim's actual bones, was not so prejudicial to the defendant as to outweigh the probative value of the testimony. Therefore, we find that this issue lacks merit.

### Sufficiency Challenge

In his final issue, the defendant challenges the sufficiency of the evidence introduced at trial to support his conviction for first-degree premeditated murder. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v.

<u>Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982).  Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence.  <u>Id.</u>

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt.  <u>See</u> Tenn. R. App. P. 13(e); <u>Harris</u>, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." <u>See</u> <u>Tuggle</u>, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof.  <u>State v. Morgan</u>, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." <u>Matthews</u>, 805 S.W.2d at 779.

In the instant case, the defendant specifically challenges the sufficiency of the evidence to support a finding of premeditation.  Tennessee Code Annotated section 39-13-202(a)(1) defines first degree murder in pertinent part as "a premeditated and intentional killing of another."  Tennessee Code Annotated section 39-13-202(d) provides:

> As used in subdivision (a)(1) "premeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-202(d). Therefore, in order to convict the defendant of his indicted offense, the State was required to prove beyond a reasonable doubt that the defendant attacked the victim with "premeditation."

"[W]hether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the" commission of the crime.  <u>State v. Billy Gene Debow, Sr.</u>, No. M1999-02678-CCA-R3-CD, 2000 WL 1137465, at *4 (Tenn. Crim. App. at Nashville, Aug. 2, 2000); <u>see also</u> <u>State v. Bland</u>, 958 S.W.2d 651, 660 (Tenn. 1997); <u>State v. Anderson</u>, 835 S.W.2d 600, 605 (Tenn. Crim. App. 1992).  Some relevant factors that tend to support the existence of premeditation include: "the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime, [ ] calmness immediately after the killing," and evidence that the victim was retreating or attempting to escape when killed.  <u>Bland</u>, 958 S.W.2d at 660; <u>see also</u> <u>State v. West</u>, 844 S.W.2d 144, 148 (Tenn.1992). "[T]he fact that repeated blows (or shots) were inflicted on the victim is not sufficient, by itself, to establish first-degree murder."  <u>State v. Brown</u>, 836 S.W.2d 530, 542 (Tenn. 1992).

After a thorough review of the record, we find that there was sufficient evidence introduced at trial to support a finding that the defendant acted with premeditation.  First, the state introduced evidence that the defendant used a deadly weapon, namely his baseball bat, on an unarmed victim.  <u>See</u> <u>Bland</u>, 958 S.W.2d at 660.  He had carried the bat and another club to the bedroom with him for

the confrontation with the victim. While the defendant argued that he believed that the victim was reaching for a weapon when he hit the victim, the jury apparently chose not to accredit this testimony and to reject the defendant's self-defense theory, as evidenced by their verdict of first degree premeditated murder. Furthermore, the police performed a thorough search of the victim's night stands, where the defendant claimed the victim stored a gun, the victim's bedroom, and the entire house. During their search, the police did not recover a handgun. Accordingly, we find that a rational trier of fact could have found that the defendant used his weapon on an unarmed victim. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75.

Secondly, the state also introduced evidence that the victim's killing was particularly cruel. See Bland, 958 S.W.2d at 660. According to the medical examiner, the victim sustained between nine and twelve forceful blows, which mutilated his face, caving in his skull and exposing brain matter. The medical examiner also testified that the victim lived for two to three minutes after the initial bleeding began. Furthermore, she characterized some of the victim's injuries as defensive wounds, indicating that the victim made some attempts at self-defense after the attack began. Based on this evidence, we find that a rational trier off act could have found that the defendant killed the victim with particular cruelty. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75.

Third, through his own testimony, the defendant recounted that he procured a weapon, namely his baseball bat, and brought that weapon with him to the victim's room. See Bland, 958 S.W.2d at 660. The defendant claimed that he brought this weapon with him to the victim's room as a measure of protection. However, as noted above, the jury chose not to accredit the defendant's self-defense theory and instead convicted the defendant of first-degree premeditated murder. Accordingly, viewing the evidence in the light most favorable to the state, we find that a rational trier of fact could have found that the defendant procured a weapon and brought it to the murder scene. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. Evidence of planning activity is paramount to a finding of premeditation beyond a reasonable doubt. See State v. Ricky A. Burks, No. M2000-00345-CCA-R3-CD, 2001 WL 567915, at *18 (Tenn. Crim. App. at Nashville, May 25, 2001) ("The absence of planning activity and the absence of the events immediately preceding the killing militate against proof of premeditation or that the Appellant killed according to a preconceived design. Absent the element of premeditation, the Appellant's conviction for first-degree murder cannot stand.").

Finally, the state also introduced evidence that the defendant exhibited calmness after the killing. See Bland, 958 S.W.2d at 660. According to his testimony, after the killing, the defendant did not awaken his mother, but began to clean up the crime scene. The defendant cleaned up the victim's blood and moved the victim's body and blood-soaked mattress outside into the yard. Approximately an hour after the incident, the defendant called his father, who advised him to call 911. The defendant then did so and greeted the police at the door when they arrived during his 911 phone call. Viewing this evidence in the light most favorable to the state, we find that a rational trier of fact could have found that the defendant exhibited calmness after the murder. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75.

In sum, based on all of the above factors, we find that the record supports a finding that the defendant acted with premeditation when killing the victim. Therefore, the defendant's sufficiency challenge lacks merit.

## Conclusion

For the foregoing reasons, we find that none of the defendant's allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____

JERRY L. SMITH, JUDGE